

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT GEORGIA

| | |
|---|---|
| Elliott D. Dawkins [Pro se], Plaintiff, vs. J.C. Lewis Primary Health Care, Aretha Jones, CEO, Laura Adams, CFO, Hilton Fordham Human Resources Liaison, Courtney Staley, Momentum Resources. Defendant | Case No.: [Number] **Title V11 Discrimination, FLSA Retaliation, Intentional Infliction of Emotional Distress, and Hostile Work Environment** CV415-048 **DEMAND FOR JURY TRIAL** |

**COMPLAINT**

**I. PARTIES**

1.

Plaintiff, Elliott Duane Dawkins, resides in Chatham County, Georgia and is subject to the jurisdiction of this Court. At all times pertinent, Plaintiffs' employer, pursuant to Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. sec 2000 (et. seq)

2.

Defendant J.C. Lewis Primary Health Clinic is an instrumentality of the State of Georgia.

3.

The J.C. Lewis Primary Health Clinic is subject to suit in tort.

4.

The J.C. Lewis Primary Health Clinic is located in Chatham County at 125 Fahm Street, Savannah, Georgia 31401. It may be served personally at that location in care of Aretha Jones, its Chief Executive Officer.

5.

Defendant currently holds the position of Chief Executive Officer of the J.C. Lewis Primary Health Care Clinic. She resides in Chatham County. She may be served at her place of duty at 125 Fahm St, Savannah, Georgia 31401.

**II. JURISDICTION**

6.

This action is brought pursuant to 42 U.S.C. § 1983, the U.S. Constitution and the Constitution of the State of Georgia.

7.

Pursuant to O.C.G.A. § 9-10-30, venue is proper in the Chatham County Superior Court as Defendant(s) J.C. Lewis Health is headquartered within the geographical boundaries of that Court and equitable relief is sought against that Defendant.

This Court has original jurisdiction in this action pursuant to 28 U.S.C. Sections 1331 and 1343 and 42 U.S.C. Section 2000e-5, inasmuch as the matter in controversy is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq. Retaliation and Sex Discrimination in Employment Act of 1964 (ADEA), and the regulations governing federal employees, 29 C.F.R. §1614.407. This District possesses venue of this matter pursuant to 42 U.S.C. Section 2000e-5(f). The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights guaranteed by federal law, which rights provide for injunctive relief and other relief for illegal discrimination. The amount in controversy in this action exceeds the jurisdictional limits of this Court. Plaintiff filed a complaint on December 28, 2013 with the Equal Employment Opportunity Commission("EEOC") alleging violations of Title VII of the Civil Rights Act of 1964, including violations of sex discrimination, retaliation and harassment. On June 10, 2013, Plaintiff made his first Notice of Retaliation with Mrs. Kay Berland. On July 14, 2013, Plaintiff made a second Notice of Retaliation with Mrs. Rena Douse, Chief Operation Officer. On December 26, 2013, Plaintiff filed complaint with the, Equal Employment Opportunity Commission for discrimination, retaliation, continued unwarranted harassment. Plaintiff was informed that he should hear a response from employer within 10 days. On the 10th day Plaintiff was notified at 4pm January 5, 2014 of mandatory meeting to be held on January 6, 2014 stating going to be released of employment.

**III. FACTS**

8.

From March 5, 2009 until on or about January 17, 2014, during the relative time period Plaintiff held the position of Non-Exempt hourly employee male Respite Nurse of the J. C. Lewis Primary Health Care Clinic and its predecessor agency, Union Mission. Plaintiff was paid $15.50 per hour. Plaintiff is an Honorably discharged disabled veteran.

9.

As Respite Nurse, Plaintiff was, therefore, under a professional and ethical duty to ensure that the highest standards of health, safety and wellness propriety were observed at all times for and by all residents within the J. C. Lewis Primary Health Care Clinic. This duty extended to his obligation to report suspected improprieties and take action to minimize the JCLPHC potential liability. The duties of a Respite Nurse employed at the J.C. Lewis Primary Health Care were to obtain residents vital signs, administer medication, prepare meals, answer phones, maintain a safe and secure facility, administer injections, wound care treatments, data entry, maintain temperature log and oxygen log make nursing assessments, chart patient care and interaction during the twelve and one-half hour shifts;

10.

Beginning in April, 2009, Plaintiff discovered that his paycheck was short hours and overtime worked. Plaintiff worked 12.5 hours per shift, attended staff meetings and trainings that ranged from 45 minutes to 1 hour, to exceed 40 hours per work week.

Plaintiff was denied being overtime when worked in excess of 40 hours, or being paid accurately in accordance with the Fair

Labor Standard Act. Plaintiff worked through all meal breaks from time of employment to release from position in January 2014. Plaintiff performed random task off the clock 15 minutes of uncompensated time around every shift. Donna Sims, Lauren Milmine, Hilton Fordham had been accountable by the JCLPH during years 2009. 2010, 2011, 2012 and in 2013, Momentum Resources was introduced.

11.

J.C. Lewis Primary Health Cares' work week is from Sunday to Saturday. Pay stub dated Thursday December 27, 2012 through Tuesday January 15, 2013. Plaintiff worked 101.10 hours. Plaintiff was paid hourly rate for 90.58 hours and overtime rate for 10.52 hours.

12.

On pay stub another pay stub the week began Thursday March 14, 2013 to Wednesday March 27, 2013 Plaintiff work 86.67 hours and was not paid overtime. Excludes days worked Sunday to Wednesday.

13.

On another pay stub the period start date Saturday April 27, 2013 through Friday May 10, 2013.

14.

In 2012 Plaintiff continued to request correct payment of overtime and hour shortage.

15.

In September 2012 Plaintiff inquired of his purchasing of uniforms. Defendant stated that all staff are required to wear coordinating uniforms.

16.

On December 18, 2012, Plaintiff was informed of company issued bonus. Only night staff cash bonus was locked in narcotics box was taken and never received or found.

17.

On January 10, 2013, Plaintiff witness massive heart attack by co worker. Co-worker Marche Bon requested the Plaintiff to help him. Hilton Fordham called the mother of Mr. Bon and said that her son is dead. This was before being pronounced by the coroner. Plaintiff suffers from Post Traumatic Stress from this occurrence.

18.

In March 2013, Plaintiff was informed by email from Hilton Fordham that Toni Bolton of Momentum Resources was not processing information that was sent over by him correctly.

19.

In March 2013, Plaintiff inquired if he had to purchase uniforms. Defendants stated that all employees are to be in coordination with uniforms. Two males one African position on day shift as Patient Care Technician and one Caucasian position on day shift as Radiology Technician, never purchased uniforms and was not reprimanded under JCLPHC standards.

20.

On May 28, 2013, Plaintiff received Annual evaluation that was downgraded with no cause. At this time Plaintiff requested to have pay check shortage address and understanding of annual evaluation.

21.

On June 5, 2013, a mandatory was called with the Plaintiff to meet at the facility with the Plaintiff with Aretha Jones, Laura Adams, Hilton Fordham, Rena Douse and Courtney Staley. At that time, Plaintiff expressed concern of the decrease in annual evaluation with no cause showing reasoning. Plaintiff also expressed concern in shortage of pay check this being the fifth time of 2013. Plaintiff informed members present in the mandatory meeting that it is a challenge for him to make some of the staff meetings due to doctors appointments in Charleston South Carolina Veterans Administration Hospital or the Veterans Administration Clinic in Savannah, Georgia. The Veteran was informed by Aretha Jones that her "meetings were mandatory and he had to make a decision on what is more important."
During meeting Aretha Jones stated "Out of the 50 employees that I have you are the only one that complains about you check! I think that you need to go to professional counseling. It is mandatory and you have two weeks to get an appointment."
Plaintiff was given paper from the Defendant for the Employee Assistance Program (EAP) to make the appointment;

22.

After the meeting Plaintiff had a severe panic attack in his vehicle with impending doom of his future with the company embarrassment and for asking about the pay owed;

23.

In June, 2013, Plaintiff discovered that $500 a month had been paid to the CEO's boyfriend's father of the for lawn maintenance over a two (2) year period. Plaintiff questioned this expenditure because her boyfriend was also paid to do the floor and ask patients if they wanted their cars washed in the parking

lot while they waited to be seen. Using the facilities water and cleaning supplies at federal expense;

24.

On June 22, 2013, Defendant denied travel expenses for mandatory job counseling;

25.

On July 1, 2013 Plaintiff was informed once again that Toni Bolton overlooked payment of overtime;

26.

In approximately August, 2013, Plaintiff discovered that the JCLPH had allowed CEO boyfriend to receive medical treatment for wounds obtained by gunshot. These treatments occurred after hours and off the financials;

27.

In August 2013, Plaintiff reported findings of misappropriation in writing to the President of Health Resources Service Administration (HRSA) Mary K. Wakefield, PhD, RN, Chatham County Board of Health, and Occupational Health and Safety (OSHA) sending the same pictures and conditions of the facility that was texted/emailed to upper management;

28.

On September 9, 2013, Plaintiff was denied to make up four (4) hours of work to allow pay from being short overtime for mandatory staff retreat;

29.

In September, 2013, at a staff retreat, Plaintiff was harassed about why he was not participating in the events. Other staff

members were present and was not questioned by Courtney Staley as to their physical limitations of non participation. Plaintiff explained that he had a hernia repair and was unable to participate. She and staff members present began asking questions and plaintiff was deeply embarrassed.

30.

In October 2013, Plaintiff paycheck discovered that JCLPHC had withheld +$800 in wages. Plaintiff was intimidated to request the funds owed due to its sizable amount; Plaintiff was afraid to request payment due to being sent to counseling in the summer of 2013;

31.

On November 27,2013, Plaintiff emailed Defendant due to late fees and cut off notices, Plaintiff reluctantly requested the $800+ monies owed by the Defendant from Laura Adams. Adams stated in email "Elliott, Please make me understand how your paycheck is being shorted. You are hourly and therefore Momentum is simply paying you from the hours that you are punching in the time clock. Plaintiff replied with detailed calculations of the shortage;

32.

On December 2, 2013 Hilton Fordham once again placed the blame upon Momentum Resources Toni Bolton;

33.

On November 19, 2013, Defendants made slandered and defamed Plaintiff making malicious accusation causing intentional mental distress causing a volatile and Hostile Work Environment between Plaintiff and Mr. Joshua Obiajuniwa;

34.

On November 2013, Plaintiff requested clarification of the accusations to clear his name in the matter concerning Mr.

Obiajuniwa. Unfortunately, no follow up from the Defendant was forth coming; failed to take all reasonable and necessary steps to eliminate Hostile work environment from the workplace and to prevent it from occurring in the future.

35.

In December, 2013, Plaintiff and staff was issued another cash bonus. The Plaintiff expressed interest in obtaining a form to claim the money for tax purposes. Hilton Fordham stated that he would follow up on the matter.

36.

Plaintiff suspected that misuse of facility for personal gain at federal expense. The JCLPH budgeted $13,200 for food and $13,008 for kitchen supplies. As of August 2013 $10,044.26 was used for food. Plaintiff suspected that these expenditures may have been improper in that items of Second Harvest Food Bank was retrieved and delivered to JCLPH and removed from premises by staff members leaving little to no food and snacks for residents. Residents were asked to remove the items and place food and supplies in the staffs personal vehicles. Clients were without food diabetics had uncontrolled blood sugars, or no items to bring blood sugars up if they dropped in critical ranges;

37.

Plaintiff had to purchase sugar (candies) for diabetics, laundry detergent, food, toothpaste, toothbrushes, soap, and other sundries for clients out of his personal funds, do to none of the items available;

38.

Clients had to wash clothes with floor cleaner for detergent to clean their clothes causing skin irritations;

39.

Misuse of government funds by use of personal use of printer, ink and paper by staff, supervisors, and management for school work, fliers, business brochures and other non medical facility jobs;

40.

Knowing allows stealing of time of Aretha Jones CEO Aunt Florence Campbell(Janitor) to go to store and play Georgia Lottery tickets and slot machines on the clock. Campbell comes to work and clocks in and leaves to take child to school and does not return sometimes until after lunch time,

41.

Use of facility for personal profit for weddings, meetings, office store, workout programs ect…;

42.

CEO Aretha Jones pays boyfriend hereby only known as Rico to wax the floors of the facility; the people that he brings in drink alcohol and smoke drugs on the premises, only cleaned the floors and facility when being inspected or toured;

43.

CEO Aretha Jones allowed her boyfriend to wash cars on the premises using the water of the building to make personal profit for his business; asking clients while waiting to be seen for doctor appointments, if they wanted their cars washed;

44.

Transactions of sale of shoplifted and stolen goods in the CEO Aretha Jones office, ie… purses, clothes;

45.

Aretha Jones CEO, boyfriend was shot and received treatment at
no cost and after hours;

46.

November and December 2012 cash company bonus was given. The
question was raised amongst staff about paying taxes on the
money. Plaintiff followed up questioning with Human Resources
Liaison Hilton Fordham and was told that feedback would be
given. When request for the money for the night shift to be
given it was stated that ours was stolen out of the lock box;

47.

Ten days after Plaintiff filed EEOC complaint was notified of
being downsized.

**COUNT I**

Hostile Work Enviroment

48.

Paragraphs 1 through 47 are incorporated by reference as if set
forth directly herein.

No other similarly situated Afro American male nurse employed or
other employee was frequently caused to have their pay
continuously incorrect. Plaintiff became intimidated to request
monies owed after being sent to counseling, and was subjected to
constant demeaning, intimidating, hostile environment , causing
Plaintiff severe panic attacks and mental frustration,

49.

Plaintiff's work was evaluated that he performed above satisfactory standards to company evaluations, and began to cause mental and physical stress from the recurring strain of financial shortages and harassed by Courtney Staley to scan medical records into the EMR System. Plaintiff was the only nurse held to this accountability. No other nurse was held to this standard,

50.

Plaintiff feared for his safety in work place after being falsely accused of informing management of co-worker was coming to work in flip-flops and clocking Mr. Obiajuniwa in for work.

51.

Plaintiff's communications with Health Resources Service Administration (HRSA), Occupational Health and Safety Administration (OSHA) and other individuals regarding financial status of the JCLPHC, facility images, perceived management deficiencies, questionable expenditures and possible fiscal improprieties on behalf of the JCLPHC constituted free speech on matters of concern to the public which were protected by the First Amendment to the Constitution of the United States of America. Pictures sent were also seen by member of management.

52.

Plaintiff's complaints to Health Resources Service Administration, Occupational Health and Safety Administration constituted petitions to the government for the redress of

grievances protected by the First Amendment of the Constitution of the United States of America.

53.

Plaintiff notified management of the health and safety of the residents living in J.C. Lewis Primary Health Cares facility. The cleanliness, lack of supplies for diabetics, out dated food, staff stealing food, supplies and other items from clients and facility, parking lot lighting, and doors not being able to be locked. Every issue was brought to the attention of management,

54.

Plaintiff was discharged by the JCLPHC as a result of his exercise of the First Amendment rights and not due to loss of grant received from Memorial Health.

55.

Plaintiff's discharge for the exercise of constitutional rights violates 42 U.S.C. § 1983 in that it constitutes a deprivation of rights, privileges and immunities secured by the Constitution by persons acting under color of State law.

**COUNT II**

INFRINGEMENT OF LIBERTY INTEREST

56.

Paragraphs 1 through 47 are hereby incorporated by reference as if set forth directly herein.

57.

Since the foregoing statements and the manner in which Plaintiff
was terminated are stigmatizing and false, they significantly
foreclose Plaintiff's possibility of future employment in the
field in which he was employed by Defendants.

58.

The manner in which Plaintiff was terminated and the statements
made by managers and agents of Defendant JCLPHC concerning his
termination infringed upon Plaintiff's liberty interest in his
employment as guaranteed by the Fourteenth Amendment to the
Constitution of the United States of America.

**COUNT II**

**GENDER DISCRIMINATION**

59.

Plaintiff incorporates as if fully restated all of the
allegations previously written.

60.

During the course of Plaintiff's employment with Defendant, the
Defendant, by and through its agents and employees,
discriminated against the Plaintiff in the terms, conditions,
and privileges of employment in various ways, in substantial
part because of his sex and gender in violation of Title VII of
the Civil Rights Act of 1964, 42 U.S.C. §2000e et. Seq.

61.

The above-described Race discrimination created an intimidating,
oppressive, hostile and offensive work environment which
interfered with Plaintiff's emotional and physical well-being.

62.

As a result of the hostile and offensive work environment perpetrated by Defendant's agent acting and maintained by the Defendant failed to protect Plaintiff from such discrimination, the Plaintiff suffered emotional distress, and physical pain.

63.

Defendant through its agents or supervisors failed to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failures to act of agents as described above.

64.

Defendant failed to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent itfrom occurring in the future.

65.

As a further direct and proximate result of Defendant's violation of Title VII of the Civil Rights Act of 1964 et. Seq. as described, Plaintiff has an effort to enforce the terms and conditions of the employment relationship with JCLPHC and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff.

**COUNT III**

**SEX DISCRIMINATION**

66.

Plaintiff incorporates as if fully restated all of the allegations previously written.

67.

By agreeing to recommend for promotion and rewards and thereby promoting and giving rewards to female employees over male employees who met or exceeded JCLPHC expectations, and who possessed equal or greater job experience than those promoted or

recommended for promotion or rewards, the Defendants violated the Civil Rights Act(as amended), 42. U.S.C. 2000 (et. seq.)

**COUNT IV**

**- RETALIATION**

68.

Plaintiff incorporates as if fully restated all of the allegations previously written.

69.

51. As herein alleged, the Defendants, by and through its officers, managing agents and/or its supervisors, illegally retaliated against Plaintiff by unjustly subjecting him to unjust scrutiny, false allegations of misconduct and unwelcome and derisive comments solely because he had reported the aforementioned overtime shortages. Defendants had no legitimate reasons for any such act. Each said act of retaliation is in violation of Title VII of the Civil Rights Act of 1964.

Defendant intimidated and threatened Plaintiff to choose his job over his healthcare.

70.

Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, the Defendant may have engaged in other discriminatory practices against him which are not yet fully known. At such time as such discriminatory practices become known, Plaintiff will seek leave of Court to amend this Complaint in that regard.

71.

As a direct and proximate result of the Defendant's willful, knowing, and intentional discrimination and retaliation against

Plaintiff, Plaintiff has suffered and will continue to suffer pain, humiliation and emotional distress. Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

72.

As a further direct and proximate result of Defendant's violation of Title VII of the Civil Rights Act of 1964, as described, Plaintiff has an effort to enforce the terms and conditions of the employment relationship with the Defendant and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff.

73.

Plaintiff is informed and believes, and based thereon alleges, that the Defendant's conduct as described above was willful, wanton, malicious, and done in reckless disregard for the safety and well-being of Plaintiff. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from the Defendants in a sum according to proof at trial.

PROCEDURAL DUE PROCESS

74.

Paragraphs 1 through 39 are hereby realleged as if set forth directly.

75.

Because Plaintiff was terminated based on grounds which violated the Constitution and because Plaintiff's termination infringed upon his liberty interest, Plaintiff was entitled to a hearing to accord him an opportunity to address the charges against him, before his termination was effectuated.

76.

The JCLPHC's failure to grant him such a hearing violated Plaintiff's right to procedural due process protected by the Fourteenth Amendment to the U.S. Constitution.

**COUNT IV**

VIOLATION OF THE GEORGIA CONSTITUTION

77.

Paragraphs 1 through 42 are hereby alleged as if set forth herein.

78.

The manner in which Plaintiff was discharged violated his rights to free speech and his right to petition the government for redress of grievances protected by Article 1, Paragraphs 4 and 9, respectively of the Constitution of the State of Georgia.

79.

The manner in which Plaintiff was discharged and his treatment by JCLPHC at the time of his discharge violated his right to equal protection of the law guaranteed by Article 1, 1, Paragraph 2 of the Constitution of the State of Georgia.

**COUNT V**

LIABILITY OF DEFENDANT JONES FOR

BREACH OF PLAINTIFF'S CONSTITUTIONAL RIGHTS

81.

Paragraphs 1 through 47 are hereby alleged as if set forth herein.

82.

The constitutional rights of Plaintiff as enumerated above in Counts II through IV were clearly established at the time of his discharge.

83.

Defendant Jones in her individual capacity either actually knew, or in the exercise of her duties should have known, of Plaintiff's constitutional rights.

84.

Defendant Jones in her individual capacity is therefore liable to Plaintiff for breach of Plaintiff's constitutional rights in violation of 42 U.S.C. § 1983. Notwithstanding this knowledge the defendant's intentionally, willfully, fraudulently, and maliciously did things herein alleged to defraud and oppress the plaintiff. The defendant acted with a preconceived design to inflict further injury on the plaintiff in a blatant disregard of the law and the plaintiffs rights. Defendants' acts were not the result of spur of the moment decisions, but deliberate acts

carried out over a substantial length of time. The defendants were premeditated and exhibited a conscience disregard of the patients rights. Plaintiff is therefore entitled to recover punitive damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff Elliott Duane Dawkins, demands judgment against the Defendants, in an amount which will compensate him for:

1. Violation of his rights under Title VII of the Civil Rights Act of 1964;
2. Declare that the actions of the Defendant alleged in this complaint constitute discriminatory and retaliatory practices taken against Plaintiff because of his disability, sex and gender exercise of rights in violation of 42 U.S.C. Section 2000e;
3. Immediately remove the CEO, Aretha Jones and any other agency management found responsible for discriminatory and retaliatory treatment of Plaintiff from any position which enables them to discriminate and retaliate against any employee;
4. Full and fair monetary damages in an amount to be proven at trial to compensate Plaintiff for the mental anguish, humiliation, pain and suffering and such other damages as resulted from the improper conduct of Defendant JCLPHC;
5. Compensatory damages including lost wages, past and future and/or impairment of power to earn money; physical pain, emotional distress and humiliation, past and future; and past and future medical expenses;

6. Such punitive damages as are determined by the enlightened conscience of an impartial jury to punish the Defendant for its willful, wanton, oppressive, malicious, and/or grossly negligent conduct are warranted to deter Defendant from future conduct of the type proven at trial;
7. A permanent injunction against future acts of discrimination, retaliation and harassment against Plaintiff by J.C. Lewis Primary Health Care and it's agents;
8. Trial by jury on all issues so triable;
9. Costs expended herein, including reasonable attorneys' fees;
10. Pre-judgment and post-judgment interest; and

11. Any and all other relief to which he may be demands that a trial by jury be had on all Counts and that following such trial, judgment be entered on Plaintiff's behalf against Defendant JCLPHC granting the following relief:

Furthermore, Plaintiff respectfully requests that the Court enter judgment against Aretha Jones and J.C. Lewis Primary Health Care:

1. Damages in the amount of the compensation and value of benefits Plaintiff would have received had he continued in employment and not been terminated on January 17, 2014 with prejudgment interest and full compensation for such benefits as Plaintiff lost;

2. Full and fair monetary damages in an amount to be proven at trial to compensate Plaintiff for the mental anguish,

humiliation, pain and suffering and such other damages as resulted from the improper conduct of Defendant Broome;

3. Plaintiff's costs of this action including Plaintiff's reasonable fees;

4. Such punitive damages as are determined by the enlightened conscience of an impartial jury are warranted to deter Defendant from future conduct of the type proven at trial;

5. Such further and additional relief as the Court may deem appropriate.

Respectfully submitted this 24 day of February, 2015.

(PRO SE)

Elliott D. Dawkins

2071 Grove Point Road

Savannah, Georgia 31419

(912) 507-9984

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable in this action.

Dated: February 24, 2015

ELLIOTT DAWKINS

BY:

PLAINTIFF PRO'SE

**From:** Laura Adams
**Sent:** Wednesday, November 27, 2013 10:39 PM
**To:** Elliott Dawkins
**Cc:** Hilton Fordham; Aretha Jones; Rena Douse; Courtney Staley
**Subject:** Re: Pay Check Shortage

Elliott,

Please make me understand how your paycheck is being shorted. You are hourly and therefore Momentum is simply paying you from the hours that you are punching in the timeclock.

Thanks.

Laura

Sent from my iPhone

On Nov 27, 2013, at 10:29 PM, "Elliott Dawkins" <EDawkins@jclewishealth.org> wrote:

Good Evening everyone,


I would like to thank you for the advancement on this pay check, receiving it before Thanksgiving is greatly appreciated, thoughtful as well as needed. However, my check is short once again. I pride myself at being a great manager of my finances when given the resources. I enjoy the community that I am able to serve and the opportunity that it gives me to help them. Now through no fault of my own I am delinquent in my mortgage payment and other bills since my October shortage. Now once again this pay as well. I am trying to "rob peter to pay paul". As stated in a previous email, I am not as financially sound as most and can not afford to miss payment for any days that I worked. I know that it is not any of your responsibility of how I spend my the finances that I work for; or if I make bad business decisions with those finances. But, If any of you can enlighten me on the reason that my paycheck is consistently short PLEASE, PLEASE, PLEASE, I am begging you to inform me and make me aware. That way I am aware and that way I can immediately correct it on my end.


Elliott Dawkins


----------

From: **Elliott Dawkins** <EDawkins@jclewishealth.org>
Date: Fri, Jan 31, 2014 at 9:27 AM
To: "elliottdawkins@gmail.com" <elliottdawkins@gmail.com>

From: Hilton Fordham
Sent: Monday, March 12, 2012 9:53 AM
To: employees; pbdc
Subject:

Good morning,

As many of you have noticed some employees have began to exercise on their lunch breaks. The invitation to join is for all staff who choose to do so. However, if you would like to join the boot camp facilitated by Jamar on Monday, Wednesday, and Friday, the cost is $25.00 per pay period for six weeks. On Tuesdays and Thursdays most of the ladies are walking during lunch and a few others are doing P90x. Participation on Tuesday and Thursday is free of charge. Feel free to join, as all staff is encouraged to participate.

Sent from my iPad

**From:** Jamar Frink
**Sent:** Monday, March 04, 2013 2:30 PM
**To:** employees; dental
**Subject:** Spring Into Shape

Good Afternoon Team,

Beginning **Tuesday April 2, 2013** we will begin to have boot camps again during our lunch break. The camp will be **4 weeks** long with sessions on **Tuesdays and Thursdays at 12:30 pm**. The sessions will last approximately 30 minutes in attempts to give you enough time to get ready to return to work. In my effort to promote fitness and health; the cost of the camp in April will be only **$35.00 per person.** We'll need at least 8 participants for the 4 week program but it is limited to only 12 participants. If more than 12 of us want to participate I will consider having camps on Mondays and Wednesdays as well to accommodate everyone. Please email or call me asap if you are interested to reserve your spot and/or have any questions.

Thanks in advance,

Jamar E. Frink
Executive Assistant
J.C. Lewis Primary Health Care Center, Inc.
Ph. 912-495-8887 Ext. 6702 Direct: 912-721-6702
Fax: 912-495-8881

J.C. Lewis Primary Health Center Inc.March 19-May 7th, 2011

| Staff | JUNE 29 SAT | 30 SUN | JULY 1 MON | 2 TUES | 3 WED | 4 THU | 5 FRI | 6 SAT | 7 SUN | 8 MON | 9 TUES | 10 WED | 11 THU |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Melissa Ph.Tec | | | | PTO | A | | | | | | | A | |
| Leslie PCT | | | OS | OS | OS | | | | | OS | OS | OS | |
| Tanisha PCT | | | A | | A | | | | | A | | A | |
| KC PCT | | | | A | | | | | | | A | | |
| Rose LPN | | | | | | A | | | | | | | A |
| Monique LPN | | | | | A | | OFF | CLINIC | | | | A | |
| Theresa LPN | | | A | | | | | | | A | | | |
| Ann LPN | | | | A | | | A | | | | A | | |
| TEMP LPN | | | | | | | | | | | | | |
| Mary LPN | A | A | P | | | | | PTO | PTO | PTO | | | |
| Sondra LPN | P | P | | | P | P | | | | P | P | | |
| Elliott LPN | | | | P | | | P | P | P | | | P | P |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| Tonya LPN | | | | | | | | | | | | | |
| Carolyn LPN | | | | | | | | A | A | | | | |
| Joshua RA | P | P | | | | | | P | P | | | | |
| | | | | | | | | | | | | | |
| Staff Meeting | | | | | | | X | | | | | | |

| Staff | 12 FRI | 13 SAT | 14 SUN | 15 MON | 16 TUES | 17 WED | 18 THU | 19 FRI | 20 SAT | 21 SUN | 22 MON | 23 TUES | 24 WED | 25 THU | 26 FRI | 27 SAT | 28 SUN | 29 MON |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Melissa Ph.Tec | X | CLINIC | | | | A | | | | | | | A | A | | | | PTO |
| Leslie PCT | | | | OS | OS | PTO | PTO | PTO | | | PTO | OS | OS | | OFF | CLINIC | | OS |
| Tanisha PCT | | | | A | | A | | OFF | CLINIC | | A | | A | | | | | A |
| KC PCT | | | | | A | | | | | | | A | | | | | | |
| Rose LPN | OFF | CLINIC | | | | | A | | | | | | | A | | | | |
| Monique LPN | | | | | | A | | | | | | | A | | | | | |
| Theresa LPN | PTO | | | PTO | PTO | PTO | PTO | PTO | | | PTO | | | | | | | A |
| Ann LPN | A | | | A | | | | A | | | | A | | | A | | | |
| TEMP LPN | | | | | | | | | | | | | | | | | | |
| Mary LPN | | A | A | P | | | | | A | A | P | | | | | A | A | P |
| Sondra LPN | P | P | P | | | P | P | | | | | P | | | P | P | P | |
| Elliott LPN | | | | | P | | | P | P | P | | | P | P | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| Tonya LPN | | | | | | | | | | | | | | | | | | |
| Carolyn LPN | | | | | | | | | | | | | | | | | | |
| Joshua RA | | P | P | | | | | | P | P | | | | | | P | P | |
| | | | | | | | | | | | | | | | | | | |
| Staff Meeting | | | | | | | | X | | | | | | | | | | |

| Staff | 30 TUES | 31 WED | AUG 1 THU | 2 FRI | 3 SAT | 4 SUN | 5 MON | 6 TUES | 7 WED | 8 THU | 9 FRI | 10 SAT | 11 SUN | 12 MON | 13 TUES | 14 WED | 15 THU | 16 FRI | 17 SAT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Melissa Ph.Tec | PTO | A | | | | | OFF [illegible] | A-[illegible] | | | | | | | | A | | | |
| Leslie PCT | OS | OS | | | | | OS | OS | OS | | PTO | | | OS | OS | OS | | | |
| Tanisha PCT | | A | | | | | A | | A | | | | | A | | A | | | |
| KC PCT | A | | | OFF | CLINIC | | | A | | | | | | | A | | | | |
| Rose LPN | | | A | | | | PTO | PTO | PTO | PTO | PTO | | | | | | A | | |
| Monique LPN | | A | | | | | | | A | | | | | | | A | | | |
| Theresa LPN | | | | | | | A | | | | | | | A | | | | | |
| Ann LPN | A | | | A | | | | A | | | A | | | | A | | | A | |
| TEMP LPN | | | | | | | | | | | | | | | | | | | |
| Mary LPN | | P | | | A | A | P | | | | | A | A | P | | | | | A |
| Sondra LPN | | PTO | PTO | | | | | PTO | | | PTO | P | P | | | P | P | | |
| Elliott LPN | P | | | P | P | P | | | P | P | | | | | P | | | P | P |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| Tonya LPN | | | | | | | | | | | | | | | | | | | |
| Carolyn LPN | | | | | | | | | | | | | | | | | | | |
| Joshua RA | | | | | P | P | | | | | | P | P | | | | | | P |
| | | | | | | | | | | | | | | | | | | | |
| Staff Meeting | | | | X | | | | | | | X | | | | | | | | |

*Please Remember Staff meetings are subject to change based on the schedule of the CEO. CStaleyRN

March-May 2011

# FW: Timesheets

Elliott Dawkins

**Sent:** Saturday, November 27, 2010 7:32 AM

**To:** Stephanie Dixon

**Cc:** Rena Douse

**Importance:** High

---

**From:** Elliott Dawkins
**Sent:** Thursday, November 25, 2010 10:32 PM
**To:** ,
**Cc:** Rena Douse
**Subject:** FW: Timesheets

Ms. Stephanie,

This is the reason that i have been taking 30 mins out for lunch. I was unaware that i was in violation. This message was sent to me via Mrs. Rena via Mrs. Donna. Please forgive me for my misinterpretation. I had believe that i was following my last order.
Thank you
Elliott Dawkins

---

**From:** Rena Douse
**Sent:** Wednesday, September 22, 2010 1:28 PM
**To:** Elliott Dawkins
**Cc:** Donna Sims; Aretha Jones
**Subject:** timesheet

Elliott it is imperative that you note 30 min-1hr lunch on your timesheet per shift. If you have any questions please see me or Donna Sims.

Thanks

Rena

---

**From:** Stephanie Dixon
**Sent:** Monday, November 22, 2010 12:21 PM
**To:** Elliott Dawkins; Mary Tilley
**Subject:** Timesheets

You must take a 1hour lunch break for every shift you work. I have adjusted your timesheets accordingly, but in the future, they will be returned to you for corrections.

*Stephanie E. Dixon*

Stephanie E. Dixon, LPC
Operations Coordinator

# RE: Out to Lunch

Elliott Dawkins

**Sent:** Friday, December 03, 2010 2:15 AM

**To:** Stephanie Dixon

**Importance:** High

---

Good Day Ms. Stephanie,

Per our conversation on yesterday 12/2/2010 approximately 9am via telephone. You made mention of federal laws for taking breaks/lunches for working certain amount of hours. I did a little research on the matter and found out something that enlightened me and I would like to pass it on so we both will be familiar of/with the law.

In my research of state lunch and break laws, I have learned that Georgia is one of many states that does not have any specific state laws regarding this topic.

Although Georgia does not have a lunch and break law for those persons 16 and over, there are applicable federal rules for Georgia citizens. While Federal Law does not mandate specific breaks or meal periods, it does give guidance as to whether or not an employee should be paid during these times. Short breaks, those that are usually 20 minutes or less, should be counted as hours worked. Genuine "meal periods" are usually 30 minutes or more, and do not need to be compensated as work time. **For this to be the case, however, the worker must be completely relieved of his or her duties during the meal break. If the employee is still required to do any duties (even small duties such as answering a phone), it can't be considered a meal or lunch period and must be paid.**

Federal law also contains other provisions related to employee pay during times of waiting, sleeping and traveling. Whether or not waiting time needs to be considered paid work hours depends on the situation. If an employee is allowed to do something of his or her choosing while waiting for another task to be finished or while waiting at the workplace for his or her services to be called upon, it is generally considered work time.

Respectfully submitted,

Elliott Dawkins

## Per Federal Labor Law

Rest and Meal Periods ☐ top

**§ 785.18 Rest.**

☐ top

Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must

be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time. ( *Mitchell* v. *Greinetz*, 235 F. 2d 621, 13 W.H. Cases 3 (C.A. 10, 1956); *Ballard* v. *Consolidated Steel Corp., Ltd.*, 61 F. Supp. 996 (S.D. Cal. 1945))

**§ 785.19 Meal.**

top

(a) *Bona fide meal periods.* Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. ( *Culkin* v. *Glenn L. Martin, Nebraska Co.*, 97 F. Supp. 661 (D. Neb. 1951), aff'd 197 F. 2d 981 (C.A. 8, 1952), cert. denied 344 U.S. 888 (1952); *Thompson* v. *Stock & Sons, Inc.*, 93 F. Supp. 213 (E.D. Mich 1950), aff'd 194 F. 2d 493 (C.A. 6, 1952); *Biggs* v. *Joshua Hendy Corp.*, 183 F. 2d 515 (C. A. 9, 1950), 187 F. 2d 447 (C.A. 9, 1951); *Walling* v. *Dunbar Transfer & Storage Co.*, 3 W.H. Cases 284; 7 Labor Cases para. 61.565 (W.D. Tenn. 1943); *Lofton* v. *Seneca Coal and Coke Co.*, 2 W.H. Cases 669; 6 Labor Cases para. 61,271 (N.D. Okla. 1942); aff'd 136 F. 2d 359 (C.A. 10, 1943); cert. denied 320 U.S. 772 (1943); *Mitchell* v. *Tampa Cigar Co.*, 36 Labor Cases para. 65, 198, 14 W.H. Cases 38 (S.D. Fla. 1959); *Douglass* v. *Hurwitz Co.*, 145 F. Supp. 29, 13 W.H. Cases (E.D. Pa. 1956))

(b) *Where no permission to leave premises.* It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period.

---

**From:** Stephanie Dixon
**Sent:** Thursday, December 02, 2010 12:34 PM
**To:** JCLEWIS
**Subject:** Out to Lunch

*Stephanie E. Dixon*
Stephanie E. Dixon, LPC
Operations Coordinator
Primary Health Care Services
912-495-8887, ext. 1210
912-495-8881 (fax)
sdixon@unionmission.org
www.unionmission.org

# FW: Uniform change

Hilton Fordham

**Sent:** Monday, September 26, 2011 3:53 PM

**To:** dental; employees

Reminder. Please see email below.

---

From: Hilton Fordham
Sent: Tuesday, August 30, 2011 2:05 PM
To: employees
Subject: Uniform change

Per our meeting, beginning October 1, 2011 the following uniform changes will take place. Please govern dress code accordingly.

Monday-Black
Tuesday-Brown
Wednesday-Hunter Green
Thursday-Royal Blue

Elliott Dawkins

**Sent:** Sunday, October 09, 2011 11:21 PM
**To:** Rena Douse; Phyllis Nichols; Stephanie Dixon
**Cc:** Aretha Jones

Good evening,

I wanted to bring to the attention of the staff of the altercation that occurred with myself and Mr. Griffin on this evening. To my understanding (please correct me if I am wrong) Mr. Griffins' hours of service are Monday - Friday 11pm to 7am. Mr. Griffin informed me that he works anytime. I informed Mr. Griffin that he is sending a mixed message to the clients when he controls the kitchen at his will on the hours that he is off duty.
On numerous occasions prior I have requested Mr. Griffin to give the residents more respect and to adhere to his scheduled hours (atleast on the nights that i work) . There are residents that have dietary needs that maybe outside of the normal parameters set. Mr. Griffin tells special dietary need clients that they have to share their supplements with the other clients and if they dont, it is told to the other clients not to "share" with this one or that one because they have thier own food.

Mr. Griffin has been informed of his mannerism, attitude and behavior directed toward the clients. I have also informed the clients that there should not be a charge accessed for "store runs". The clients are intimidated with the fear of being displaced from the program. Not for not following the guidelines but for addressing the disrespect that they feel is handed down by Mr. Griffin. I am and always will be an adovcate for the consumer and it is my duty to provide omptimal services that can be rendered on my behalf.

According to the "Credo - Accommodations must always be of the highest quality possible. Staff and volunteers must strive to make this an inviting atmosphere which creates a supportive enviorment, conducive to optimal health-reinforcing positive self esteem, and appropriate interactions with others.

Staff must be fair and compassionate in responding to the needs of the homeless people and offer the best services possible at all times"

This is my ultimate goal. If this is not an attribute displayed during the hours that i am here i am just as guilty as the person causing the offense.

The reason for the information being passed on to the above addressed is Mr. Griffin stated that the above don't have an issue with him so why should i since i don't pay his check!

1. Please inform me of the hours that Mr. Griffin is to work.

2. Please notify me if Mr. Griifin is to know the medical and dietary needs of clients.

3. Please inform Mr. Griffin of attitude with/toward clients (atleast during my shift).


I thank you for your time and attention to this matter.


Elliott Dawkins

From: Hilton Fordham
Sent: Monday, March 12, 2012 9:53 AM
To: employees; pbdc
Subject:

Good morning,

As many of you have noticed some employees have began to exercise on their lunch breaks. The invitation to join is for all staff who choose to do so. However, if you would like to join the boot camp facilitated by Jamar on Monday, Wednesday, and Friday, the cost is $25.00 per pay period for six weeks. On Tuesdays and Thursdays most of the ladies are walking during lunch and a few others are doing P90x. Participation on Tuesday and Thursday is free of charge. Feel free to join, as all staff is encouraged to participate.

Sent from my iPad

## Re: Please read

Aretha Jones
**Sent:** Tuesday, September 18, 2012 1:10 PM
**To:** employees; dental

**The grey is dark grey and on Fridays wear jeans not scrubs. In the future if I send out an email and you are in need of clarification please ask me not others!**

**Thanks**

**From:** Aretha Jones

**Sent:** Tuesday, September 11, 2012 3:51 PM
**To:** employees; dental
**Subject:** Please read
**Importance:** High

Hello Staff....

**Uniform colors will change as of October 1, 2012**

- Monday-Gray
- Tuesday-Black
- Wednesday-Royal Blue
- Thursday- Hunter Green
- **Friday & Saturday- The ENTIRE staff will wear a JCLPHCC's t-shirt & jeans**

*T-shirts: Grey Retreat t-shirts , Pink Breast Cancer t-shirt, Neon Yellow FQHC week t-shirt, Red HIV testing t-shirt, White, JCLPHCC t-shirt, etc…*

Thanks Aretha

# FW: payroll

Elliott Dawkins
**Sent:** Saturday, December 15, 2012 11:10 PM
**To:** Elliottdawkins@yahoo.com

---

From: Lauren Milmine
Sent: Monday, August 01, 2011 8:20 AM
To: Elliott Dawkins
Subject: RE:

Hello Elliott,
The work week is still Sunday to Saturday even if though the pay periods will change the work week remains the same for purposes of calculating overtime. Therefore, if you work overtime in a given week and it includes hours from 2 different pay periods, it will be included in the check for the decibels pay period. So, your calculation of overtime th at should have been inckuded was incorrect because the work weeks were still Sunday to Saturday. Please call me if you have anymore questions. Thank you

---

From: Elliott Dawkins
Sent: Sunday, July 31, 2011 6:21 AM
To: Lauren Milmine
Subject:

Hello,

I just checked my pay stub and from my calculations there's seems to be a difference in hours that should have been accounted for on this check. From July 12th - July 18th I worked 32.65 + 3.73 + 12.75 hours= 49.13 for week #1 seven (7) days. Week 2 July 19th - July 25th I worked 8.62+ 4.05+ 9.17+ 3.95 hours= 25.79 seven (7) days.

These are each composed of a seven day work week. If we add in July 26th that will make week #2 a eight (8) day work week and the total hours worked would be 38.52, that is adding 12.73 hours.

15 days (12th - 26th)

Hourly rate x 78.52 hours = $1217.06

Overtime rate x 9.13 hours = $212.27

Gross $1429.33

Gross on check $1179.17

Difference -$250.16

14 days (12th - 25th)

Hourly rate x 65.79 hours = $1019.75

Good Morning,

My name is Elliott Dawkins I am employed at J. C Lewis Health clinic. I would like to inquire about the meals that are being served for breakfast. None of the clients have made any gripes, comments or suggestion. Everyone is grateful for the meals provided and thankful for the services that they are being blessed to receive.

It was/is a notice upon my part of the portions that are being served to the consumers (particularly breakfast).

May I first clarify that I am not a dietician and I am in no way qualified to address portion control, size(s), or intake. I am just a concerned employee, which just has a genuine concern for the best interest of the consumer in mind.

That being said, the items that are sent over for the breakfast are indeed adequate. The milk (container and powdered), sausage, bacon, orange juice, boxed corn flakes, and boiled eggs are all greatly prepared.

My concern is in the area of the grits and the oatmeal packages. The current clients don't really indulge in the items that I earlier named (most time than not will they decline) even though they are offered to prevent waste and cross-contamination.

So, if a consumer prefers grits to oatmeal and it is available, should/could we obliged the consumer? Also, is it a standard for the clients to receive only one packet of either grits or oatmeal a day? I must confess that I give the clients 2 packets maximum of their choice a day. So if there is a shortage of these items for J.C. Lewis it is a possibility that it is my fault. I take full responsibility. I have a 2 year old grandson and he eats 2 packs of oatmeal or grits himself. So I just assumed that an averaged sized male or female consumer is entitled to the same as at least my grandson.

Most of the time that is all the consumer requests, is one or the other and something to drink. Some can not eat the bacon or the sausage due to dietary restrictions. So this is all that they will have to cover them and the medication that they have taken at 5:00 am until lunch time 12:30p -1:00pm.

I was informed that the consumers are only entitled to one packet. On the oatmeal alone the caloric intake ranges from 100 – 170 calories per packet. If the consumers have breakfast at 5:15-5:30am and a glass of orange juice those calories have depleted well prior to lunch being served at approximately 1:00pm.

As I stated earlier, not one of the clients has made any conversation concerning the meals they are served, quality or quantity. It was just on my heart to ask for them since it is my moral and legal duty to the welfare of those that are in my charge.

If I can be guided and informed properly in this matter it would be a great pleasure. I surely thank you for you time and attention to this matter.

Respectfully submitted,

Elliott Dawkins
(edawkins@jclewishealth.org)

This is a written testament of the events that I Elliott Duane Dawkins observed January 10, 2013:

At 8:52pm Mr. Bon left from my presence stating that all of his trashed was pulled and all he had to do was to mop. Mr. Bon stated that he was going to take a shower. The residents came in the clinic at 8:58 for 9 o'clock med call.

At 9:00pm on I (Elliott Dawkins) went to pull out the snacks for the clients. On the way back I stopped and stood behind the couch in the common area talking about the movie (Iron man 2) with the clients (Horne 11a, Simpson 14a, Howard 14b, Spann 15a, and Mixon 15b). Approximately, 9:05 I though I heard a yell/scream or loud talking, I checked all of the clients to see who was missing and notice that the only one that was missing was Mr. Bon. I assumed he was on his cell phone in a conversation. Approximately 1- 2 minutes later I heard the noise again. I went to his door and knocked and asked was everything ok. I knocked again and repeated the question as I heard mumbling on the other side of the door and he responded Mr. Elliott.

When I opened the door I found Mr. Bon profusely sweating in a grey t-shirt and no other articles of clothing. His speech was slurred and he had evidence of regurgitation around his mouth and chin. Mr. Bon stated MY ARM, I asked him which arm he stated my left arm (slurred speech) I think I'm having a stroke. I asked again what happened are you ok. Mr. Bon stated "awe man I'm having a stroke". I asked Mr. Bon could he sit still. He became in a seized like state. I immediately turned him on his side and ran to call Southside EMS informing them of the situation of possible stroke. I gave the direction for them to come to the direct back upon entering the gate. I ran back to the room Mr. Bon was in the same position as I left him. I turned him over and reassured him that help was coming. I began to perform a stroke assessment. I asserted that he was possibly having a stroke. I called for one of the residents Mixon 15b (who was in the common area) to come and hold Mr. Bon on his side until I call EMS again. I called called EMS a second time to inform that I do believe that it is a stroke and need assistance. I was told that EMS was in route should be there shortly. I returned to the room and told Mixon 15b thank you and asked him to leave the room. I asked Mr. Bon again what happened he yelled in pain stating "it hurts all over!" I informed Mr. Bon that I was going to put his pants on and proceeded to do so, when he became combative. I informed Mr. Bon that it me (Elliott) and I cut on the light. Mr. Bon state to "CUT THE LIGHT OUT!" I WANT MY MAMA!" I again reassured MR. Bon that help was on the way. He responded "are you sure" I told him that I could hear them right outside the window. Mr. Bon began to yell and scream. I heard the EMS team enter the hall I heard one say "is it where the scream is?" I directed them to my location. Upon entering the room the Southside EMS team asked what was going on I informed them of the situation and that I believed that it was a possible stroke occurring from my assessment. One of the gentlemen shined the light in Mr. Bons' eyes and stated "no he is not having a stroke". They asked what information I knew about Mr. Bon I told them not much. "He's from Elberton Georgia, He is the RA here Resident Assistance and he takes care of the clients that live here." He asked what do I know what happened Mr. Bon yelled "GIVE ME A SHOT!" He responded "a shot of what do you need a shot for?" Mr. Bon began to clench his teeth. I told the EMS team that I had just got finished talking with him and he said "that he was coming to take a shower and all he had left to do was mop."

Mr. Bon began to get extremely restless and was moving about the bed and started to slide off the foot of the bed. I grabbed his head as the other EMS team member assisted him to the ground. Mr. Bon became limp and we lifted Mr. Bon. I had his feet and the EMS member was lifting him under his arms and we placed him on the gurney. Mr. Bon came around and stated that he was going to call the police. Mr. Bon was very agitated and moving about the gurney. They began to secure Mr. Bon to the gurney and his legs kept coming free. He yelled "I CANT BREATHE!" The EMS team member stated "yes you can". Mr. Bon began to pull on the straps that were securing his chest and slid down the gurney and with his right hand pulling on the strap outwardly stating "I can't breathe" the EMS team member state "your making yourself not be able to breathe by sliding down like that, slide back up". Mr. Bon was assisted several times to correct the position. One EMS team member stated that "were going to have to strap you down if you keep it up." The other EMS team member went outside of the room and came back with a set of cloth restraints stating that "it was only one pair in there." "Where do you want to put it?" The other EMS team member stated "on his feet." As he called for assistance on his radio and stated to "send PD". Mr. Bon stated "I AM GOING TO TELL MY DADDY." I whispered to one of the EMS Team members that I believed that his daddy is deceased from what I recall him mentioning." I informed the EMS team that I have not seen him move his left arm this whole time. Mr. Bon began to tighten and clench his teeth. And said "Elliott Help me." I told Mr. Bon it will be ok. Mr. Bon clenched his teeth and slumped over. The EMS team member said "we have to go." And started shaking Mr. Bon and wheeled him out of the back of the building to the ambulance. Once in the ambulance I observed the EMS team try to rip the shirt to expose Mr. Bons' chest. I left to go get scissors for them to assist. When I returned I observed the EMS Team placing a tube down Mr. Bon throat. At that time 2 savannah police officers arrived and a Southside emergency member in a white and red truck. The gentleman in the truck got out of the truck and got inside of the ambulance. Once inside he donned gloves and proceeded to perform cpr chest compressions. I noticed that the gentleman performing the compressions was using 1 hand after several compressions. This went on approximately 5 minutes and then the gentleman performing the compressions got out of the ambulance and he drove out of the gate of J.C. Lewis Health Clinic at 9:42pm on January 10, 2013.

[signature] 1/11/13 @ 12:45 AM

Elliott Dawkins

**RE: Checks**

Hilton Fordham

**Sent:** Thursday, January 17, 2013 7:54 PM

**To:** Elliott Dawkins

Elliott this last pay period was from December 27, 2012 to 1/11/13, therefore the 26th would have been on your previous paycheck. We can go over it on tomorrow before the meeting if you would like.

---

From: Elliott Dawkins
Sent: Tuesday, January 15, 2013 8:40 PM
To: Hilton Fordham
Subject: RE: Checks

---

From: Elliott Dawkins
Sent: Tuesday, January 15, 2013 7:45 PM
To: Hilton Fordham
Subject: RE: Checks

Hello Mr. Hilton,

I am so confused and I please need for you to make some since of this to me. I have taken liberty to calculate my hours/days worked and the corresponding weeks. When we spoke you informed me that the pay week would end on the 11th of January 2013.

I really need to understand the how my paycheck reads. Hours 90.58 , OTSM 10.52.

Below are the days and hours that I worked:

December 26, 2012 to January 11, 2013

Wednesday December 26 thru Tuesday January 1, 2013 total hours= 50.41

Wednesday January 2, 2013 thru Tuesday January 9, 2013 total hours= 50.61

and Wednesday January 10, 2013 total hours= 12.57

If you are available on Friday January 18, 2013, I can come early for the meeting or stay later. I get off that morning, but what ever is most convenient for you.

I thank you so much Sir,

Elliott Dawkins

Overtime rate x 9.13 hours = $212.27

Gross $1232.02

Gross on check $1179.17

Difference -$52.85


This is the reason for my questioning. I seem to always see a deficit on every one of my checks. I would love to be made salaried and this not be an issue. I pray for the day for an opening of a fulltime position to come available.

I am sorry for wanting some clarity but, I am just so use to having a finger on my finances. For the past two (2) years I have not got it correct yet. I always come up with more, but my checks are always less than expected. Please help me. I am trying to get a understanding of this matter.


I truly thank you for your patience and support with this matter. Not many are willing to take the time to explain in such detail. It is greatly appreciated.


Thank you,


Elliott Dawkins

# Re: Please Read This Entire Email

Rena Douse
**Sent:** Sunday, February 17, 2013 10:32 PM
**To:** employees

I have to admit, I too was disappointed and deeply surprised.

Mrs. Douse

On Feb 17, 2013, at 12:34 AM, "Aretha Jones" <AJones@jclewishealth.org> wrote:

> Staff:
>
> As many of you know, you never have to guess how I am feeling. I believe that upfront honesty in most situations is best; therefore I must tell you all how disappointed I am in my staff. We are a COMMUNITY Health Center and participating in COMMUNITY events should be important to all of us. When JCLPHCC is invited to a COMMUNITY event the staff should participate; it is our obligation to the COMMUNITY.
>
> Do not worry, I will not make weekend and/or after hour events mandatory because if it is not something you want to do willingly it is not beneficial to anyone. I was so disappointed at the Southern Women's Conference; there was only one staff person present. I am sending this email now but the lack of participation... basically non-existing participation is really disheartening to me. I can name several COMMUNITY events where staff participation is ridiculously low.
>
> I respect the fact that many of you have other obligations such as: children, significant others, other jobs, chores, religious activities, etc. Because I recognize that all of you have personal responsibilities I often "bend the rules." Well from this day forward please do not ask for special consideration. For example: last minute PTOs/sick days or leaving the office to go to the school, doctor, pay a bill, go to the store, etc. will not be granted, follow the policy as I will. <u>Please understand the consequences.</u>
>
> Please do not take this as retaliation; however I have to "get all of you" during your scheduled work time. It is only fair that I make sure on behalf of the patients, the COMMUNITY, and the funders that my staff works every minute of their scheduled. Because it is clear ... my staff is not willing to give any minutes back after hours and/or weekends. Basically you cannot expect something when you are not willing to give something.
>
> A written reply or verbal explanation is not needed.
>
> CEO

## Uniform Color Changes

Aretha Jones
**Sent:** Thursday, February 21, 2013 4:00 PM
**To:** employees
**Importance:** High

The new colors of scrubs for JCLPHCC will coordinate with our logo colors. The colors are permanent... meaning we will not change colors in the fall. However I expect that when your scrubs color start to fade you would replace them. Everyone can wear scrubs; if you decide to wear scrubs make sure you have the correct color on for that day. We will begin wearing the new colors on Monday April 1, 2013.

**Colors are on the chart below:**

Monday: Ceil Blue
Tuesday: Blue Mist
Wednesday: Galaxy Blue
Thursday: Grey

Thanks, Aretha



CHEROKEE
Cherokee Workwear Color Chart
CHEROKEE
Aloe
Azalea
Black
Blue Mist
Caribbean Blue
Carnation Pink
Celadon
Chocolate
Ciel Blue
Dandelion
Eggplant
Galaxy Blue
Grape
Grey
Hunter Green
Khaki
Lime Green
Mali-Blue
Mandarin Orange
Navy
Olive
Orchid
Peri
Pewter
Pink Blush
Rasberry
Red
Royal Blue
Shocking Pink
Surgical Green
Teal
Turquoise
White
Wine
BANNER UNIFORM CENTER

# RE: Scanning

Elliott Dawkins
**Sent:** Tuesday, February 26, 2013 7:50 PM
**To:** Courtney Staley

Mrs./ Ms. Courtney,

I have looked around for the stack of the scanning that you desire to be completed on tonight. If you can inform me of the location would be greatly appreciated.

I believe that I have completed the stacks and stamped scanned on all documents that I entered into the system. If I have not fulfilled your request please accept my apology and I will make a greater effort in the future.

Respectfully,

Elliott Dawkins

---

**From:** Courtney Staley
**Sent:** Friday, February 22, 2013 12:04 PM
**To:** Ann Crawford; Elliott Dawkins; Mary Tilley; Sondra Graves; Tonya Dawkins
**Subject:** Scanning

Respite weekend and night shift nurses please remember to complete some scanning on your shift this weekend. Please leave for me the documents that you have scanned with your name. Thanks in advance.
Courtney Staley, RN/Clinic Mgr

# RE: Meeting

Elliott Dawkins

**Sent:** Sunday, March 03, 2013 7:34 PM
**To:** Hilton Fordham
**Cc:** Laura Adams

Great evening Sir,

I must have missed the initial email concerning the meeting. Please excuse my oversight for not responding promptly, as I do not see a message in my history. Would you mind resending so that I may see the exact date that the original message was sent. I will be there March 7, 2013 at 2pm.

Thank you in advance,

Elliott Dawkins

---

From: Hilton Fordham
Sent: Saturday, March 02, 2013 3:40 PM
To: Elliott Dawkins; Sondra Graves; Mary Tilley
Cc: Laura Adams
Subject: Meeting

Reminder for meeting Thursday from 2 p.m. to 3 p.m.

Sent from my iPhone

**From:** Jamar Frink
**Sent:** Monday, March 04, 2013 2:30 PM
**To:** employees; dental
**Subject:** Spring Into Shape

Good Afternoon Team,

Beginning **Tuesday April 2, 2013** we will begin to have boot camps again during our lunch break. The camp will be **4 weeks** long with sessions on **Tuesdays and Thursdays at 12:30 pm**. The sessions will last approximately 30 minutes in attempts to give you enough time to get ready to return to work. In my effort to promote fitness and health; the cost of the camp in April will be only **$35.00 per person.** We'll need at least 8 participants for the 4 week program but it is limited to only 12 participants. If more than 12 of us want to participate I will consider having camps on Mondays and Wednesdays as well to accommodate everyone. Please email or call me asap if you are interested to reserve your spot and/or have any questions.

Thanks in advance,

Jamar E. Frink
Executive Assistant
J.C. Lewis Primary Health Care Center, Inc.
Ph. 912-495-8887 Ext. 6702 Direct: 912-721-6702
Fax: 912-495-8881

# RE: Meeting

Elliott Dawkins
**Sent:** Thursday, March 07, 2013 5:31 PM
**To:** Hilton Fordham
**Cc:** Laura Adams

Thank you Sir.

From: Hilton Fordham
Sent: Thursday, March 07, 2013 4:48 PM
To: Elliott Dawkins
Cc: Laura Adams
Subject: Re: Meeting

His name is Dave Kindred, our contracted Human Resources, from Momentum.

Sent from my iPhone

On Mar 7, 2013, at 4:44 PM, "Elliott Dawkins" <EDawkins@jclewishealth.org> wrote:

> Hello,
>
> Unfortuantely, I may have missed the formal introduction of the gentleman that was apart of our meeting today March 7, 2013 at approximately 2:15pm. If you would be so kind and please forward me his professional contact infomation.
>
> Thank you in advance,
>
> Elliott Dawkins

# Meeting

Elliott Dawkins
**Sent:** Thursday, March 07, 2013 11:17 PM
**To:** Hilton Fordham

Mr. Hilton,

After our meeting today March 7, 2013, I went home and formulated a projected payroll schedule. At your leisure would you please review the calendars (May - July 2013) for accuracy. I started the month from May 1 since that is when our status changes are effective. I have placed them in the box outside of your office.

I appreciate you and the others taking the time to carefully explain this matter. I am just the type of person that is visual, and I have to see it in black and white for it to make sense to me.

Thank you in advance,

Elliott Dawkins

# RE:

Hilton Fordham
**Sent:** Thursday, May 16, 2013 10:53 AM
**To:** Elliott Dawkins; Courtney Staley
**Cc:** Aretha Jones; tbolton@nethr.net

Elliott,

Toni is out today as well. I was informed that she should be back in the office on tomorrow. I will need to speak with her and then I will get back with you.

---

**From:** Elliott Dawkins
**Sent:** Thursday, May 16, 2013 6:07 AM
**To:** Hilton Fordham; Courtney Staley
**Cc:** Aretha Jones; tbolton@nethr.net
**Subject:**

Mr. Hilton,

I had planned to meet with Ms. Courtney this morning, but I just seen that she called in today May 16, 2013. So my next chain of command would be yourself, I have sent an attachment(s) of my paycheck where I was only paid for a total of **67.05** hours on May 15, 2013. When in actuallity I worked **75.95** hours total. Week (1) 4/21/2013 **12.48** hours. Week (2) **37.93** and week (3) partial **25.54**. I was only paid for **16** hours opposed to **24.9** hours for the 27th and 28th of April 2013. This is a defict of **8.9** hours. If I would have to come in and meet with you to address this deficit please inform me of a time and when you will be available. Also attached are pay weeks 1 - 3 that shows my hours worked.

Please keep me inform me of the status of how to proceed.

Thank you,

Elliott Dawkins

Thanks!

Toni

-----Original Message-----
From: Elliott Dawkins [mailto:EDawkins@jclewishealth.org]
Sent: Tuesday, May 28, 2013 8:35 AM
To: Toni Bolton
Subject: RE: Cut off

So that makes this pay period to consist of 18 or 19 days. Also, will get paid for 8 or 12.5 hours for memorial day. How does it work since I work a 12.5 hour shift. Is the holiday dependant on your shift or standard. Thank you, Elliott Dawkins

# O2 & Scanning

Rena Douse

**Sent:** Tuesday, May 29, 2012 10:48 PM
**To:**   Elliott Dawkins; Theresa Critton; Mary Tilley; Sondra Graves; Tonya Dawkins; Ann Crawford; Carolyn Maynor; Sheneda Oneal

Good evening, effective immediately, nurses working 7p-7a will be required to check
the oxygen tank and document results on the form attached to the tank prior to the
end of each shift. If you discover an empty tank, it will be your responsibility to
notify R. Douse immediately.

Last all nurses will now be required to scan medical records into EHR system..to
include information currently located in respite binders. All MARs will be scanned
into system at the end of the month or upon discharge by whomever working the last
day    of the month or on the day of discharge. If you do not know how to scan into
EHR, Please schedule a time to meet with Theresa or Marty by close of business June
5th. Any questions please feel free to ask.
Thanks

RD

May 29, 2013
10:24pm

Mrs. Aretha,

I would like to have this added to my evaluation as an addendum please. I first stated to Ms. Courtney that I did not want to make any comments on my 2013 performance evaluation, but after thinking about it I have decided that it would be best for me to get a clearer understanding.

It seems that my job performance has drastically diminished. If my daughter was an A student for three years and then this year she's a B student and the teacher states that nothing has changed, there raises a flag to me as a parent. Either she is not passing test, turning in home work, needs glasses; something had to change.

In using the same scenario, my evaluation has dropped considerably, and I was informed that nothing has changed. In 2012, I received $1500 incentive according to this current evaluation if it was used as last years I would only receive $1000. Something had to have changed to receive a lower performance evaluation for 2013 compared to 2012. I have been working on the items requested/suggested of me that were made on my 2012 performance evaluation. I have worked on these requests/suggestions to receive a higher score than last years to show progression. I have also been studying another language to make myself a more valuable asset. For me to work on what was suggested of me last year on the 2012 performance evaluation and to do other additional items seems a little daunting. After I received my evaluation today, I am a little muzzy.

I would like to state that I have never call off from work in the four years that I have been employed with JC Lewis Health Clinic. I am rarely late (if at all) to assume my duties, and I only request time off once during the year. I have covered shifts when everyone needed time off, I was always available. I have and always strive to be a team player. The military drills this into you and this is one of the qualities that I cherish from my past service career.

I make request to schedule my life, events and occasions around my job schedule so that nothing interferes with my employment. I have other duties when I leave here in the mornings that sometimes do not allow me to render myself available outside of my scheduled days notified. It is imperative for me to have my life scheduled out. I also try to ask how/what is expected of me, so that I may continue to perform at an optimum level and not to digress.

So I would like to understand how/what/where have I defaulted upon my duties since last year evaluation that would cause a drastic decrease in my recent performance evaluation. I found it petty for me to address each and every topic addressed by the evaluation; I understand that your time could be used for more important and pressing matters. If I can receive an overall synopsis from you would be more fitting. Thank you so much for your time and attention to this matter.

Respectfully Submitted,

Elliott Dawkins

Hello Staff,

This email is in regards to the performance incentives staff may receive. The Executive Management Team conducted performance evaluations on all of the staff that started at JCLPHCC on Jan 1, 2011- June 30,2011. If you were hired after that date then you will receive an evaluation and performance incentives if applicable at your one year anniversary. Please see Hilton if you have not reviewed and/or signed your evaluation; you do have the opportunity to schedule a meeting to discuss your evaluation if you choose to.

In the spirit of transparency this is how the amounts were determined:

| **Rating** | **FTE Amount** | **PTE Amount** |
|---|---|---|
| Superior | $2000.00 | $1000.00 |
| Excellent | $1500.00 | $750.00 |
| Satisfactory | $1000.00 | $500.00 |
| Improvement Needed | $500.00 | $250.00 |
| Unsatisfactory | $0.00 | $0.00 |

Checks are ready today and can be cashed as of tomorrow. If you have any questions please feel free to email, call, or schedule a meeting.

Thanks,
Aretha

## RE: cleaning duties for night support staff

Elliott Dawkins
**Sent:** Friday, June 07, 2013 6:49 PM
**To:** Jamar Frink
**Cc:** Courtney Staley

Good afternoon,

I am a litte confused of the night cleaning duties sheet attachment. Can you please clarify for me.

Thank you,

Elliott Dawkins

---

**From:** Jamar Frink
**Sent:** Friday, June 07, 2013 9:43 AM
**To:** Courtney Staley
**Cc:** Elliott Dawkins
**Subject:** RE: cleaning duties for night support staff

Jamar E. Frink
Executive Assistant
J.C. Lewis Primary Health Care Center, Inc.
Ph. 912-495-8887 Ext. 6702 Direct: 912-721-6702
Fax: 912-495-8881
www.jclewishealth.org

---

**From:** Courtney Staley
**Sent:** Friday, June 07, 2013 9:02 AM
**To:** Jamar Frink
**Cc:** Courtney Staley
**Subject:** cleaning duties for night support staff

Jamar,
Could you please send me a copy of the cleaning duties for the night shift support staff and also copy Elliot Dawkins. Thanks in advance.
Courtney Staley, RN

# FW: Expectations

Elliott Dawkins
**Sent:** Friday, June 07, 2013 6:58 PM
**To:** tywiley242003@yahoo.com

---

**From:** Courtney Staley
**Sent:** Friday, June 07, 2013 9:00 AM
**To:** Elliott Dawkins
**Cc:** Rena Douse; Aretha Jones; Hilton Fordham; Laura Adams; Courtney Staley; mtadams@dhr.state.ga.us
**Subject:** Expectations

Good Morning Elliott,
From our discussion on 6/5/2013 we wanted you to be very clear of your expectations as a LPN, fulltime respite nurse while employed here at J. C. Lewis Primary Health Care Center. We expect that you will be scanning during your shift to help make sure that the medical records get into the clients chart in a timely manner. You are expected to oversee the cleaning of the building according to the list that I will provide you that has the details of what should be doe. It is also expected that you attend the staff meetings that are scheduled. Please remember that staff meetings are usually the first and third Friday's of the month, however these meeting dates are subject to change based on the schedule of Mrs. Jones, CEO. We also expect that you respond to all emails promptly. Also when I send an email related to changing shifts or covering shifts please respond promptly as well even if you are unavailable to cover the shift. Please also refer to schedule in medication room where the staff meetings are also placed on the 6 week schedule. Thanks in advance.
Courtney Staley, RN

## RE: documents left in my box

Elliott Dawkins
**Sent:** Wednesday, June 12, 2013 8:15 PM
**To:** Courtney Staley
**Cc:** Rena Douse; elliottdawkins@gmail.com

Good evening Ms. Courtney,

Yes i did indeed place the scanned documents into your box. I did not know where to place them for you to receive them. In previous times (when I scanned), I would leave them for you on the table. Now, I wanted to be certain that you obtain them so that I may receive credit for scanning during my shift. Forgive me for not knowing that there was a change in whom to submit the scanned documents. I just assumed my immediate supervisor. Effective immediately, I will place all scanned documents during my shift in Mrs. Renas' box outside of here office per your request. Thank you for the information.

Have a great day,

Elliott Dawkins

---

**From:** Courtney Staley
**Sent:** Wednesday, June 12, 2013 11:54 AM
**To:** Elliott Dawkins
**Cc:** Courtney Staley
**Subject:** documents left in my box

Good Afternoon Elliott,
Your recently placed two documents inside of my box. I am confused as to why they were placed there. If these were documents that you scanned, please continue to put inside of Mrs. Douse's box outside her door with name attached as you did. If you placed them there for any other reason please let me know. Thanks in advance.
Courtney Staley, RN

**From:** Aretha Jones
**Sent:** Wednesday, June 13, 2012 4:00 PM
**To:** dental; employees
**Subject:** Floors

Please remove items from the floors on the scheduled day....if you need assistance please contact Hilton or Daryl ASAP

**Wednesday: Stripping of Floors**

- Dental
- Cafeteria Area
- Kitchen
- Janitor Closet
- Cubicles
- Clinic Area
- Internal Clinic Exam Room

**Thursday: Stripping of Floors**

- Client Rooms
- Hall Exam Rooms
- Bathrooms
- Staff Offices
- Hallways
- 2 Bathrooms up front
- 2 Bathrooms in back

**Friday, Saturday, and Sunday Waxing of Floors**

- Everyone please remove items before leaving working!

Please work with me to get this done and the crew is very aware that if the process must be smoother on their side or it will be their last time!

Thanks Aretha

# Re: Time clock/Employee Portal

Hilton Fordham
**Sent:** Tuesday, June 18, 2013 11:05 AM
**To:** Elliott Dawkins
**Cc:** Laura Adams; tbolton@nethr.net

PTO does not carry over from year to year. If it is not used by December 31st of a given year it is forfeited. All employees are able to carry over 40 hours of sick time from the previous year. Therefore your PTO as of today is 48 hours (8 per month) and your Sick time is 88 hours (48 hours for the year and 40 carried over from last year).

Sent from my iPhone

On Jun 18, 2013, at 10:59 AM, "Elliott Dawkins" <EDawkins@jclewishealth.org> wrote:

> Thank you for that. Is it something that can be changed or needs to be changed to reflect my actual accrued hours. Or where can i find my total accrued hours? I have never used any PTO or Sick time and from a earlier email sent that several hours are carried over from the previous year. Last year I did not exhaust all of my time earned, so I was just wondering what I currently have available. If it is posted somewhere you can just inform me and that way I will be able to look at it without being a bother.
>
> Thank you,
>
> Elliott Dawkins
>
> ---
>
> **From:** Hilton Fordham
> **Sent:** Tuesday, June 18, 2013 10:50 AM
> **To:** Elliott Dawkins
> **Cc:** Laura Adams; tbolton@nethr.net
> **Subject:** Re: Time clock/Employee Portal
>
> Elliott,
>
> PTO and Sick Time is maintained in house not by Momentum, therefore it could be possibly incorrect.
>
> Sent from my iPhone
>
> On Jun 18, 2013, at 10:40 AM, "Elliott Dawkins" <EDawkins@jclewishealth.org> wrote:
>
>> Good Morning,
>>
>> I did not say that anyone at J.C. Lewis denied me access. I stated that i am denied access to my payroll information that I had liberty to view previously. This weekend I tried to view my time to see why paycheck was shorter than I calculated it to be. By viewing the "portal" it allowed me to see how many hours that i was paid for. It also has my PTO calculated as part time instead of full time. I am not sure if PTO for Part or Full time is different or if it makes a difference on not, but it was something that I noticed was incorrect as well.
>> I will try to access and view again.
>> Thank you for the reply,

obligated per paycheck. If it is not a major inconvenience to anyone, is it possible to have the hours paid sooner than added to my next check. If it is impossible; I understand since the subjected error is my fault for not clocking in or out. This is just a request, but as I previously stated if it is a major inconvenience I totally understand.

Thank you,

Elliott Dawkins

---

From: Hilton Fordham
Sent: Wednesday, June 19, 2013 11:31 AM
To: Elliott Dawkins
Cc: Laura Adams; tbolton@nethr.net<mailto:tbolton@nethr.net>
Subject: Re: Time

Elliott,

Your 12 hrs will be added to your next check.

Sent from my iPhone

On Jun 18, 2013, at 8:12 PM, "Elliott Dawkins" <EDawkins@jclewishealth.org<mailto:EDawkins@jclewishealth.org>> wrote:

Thank you, You can look in the Narcotic Book to see that I indeed work that day. It just seems totally unlike me not to clock in or out that day I am truly baffled.

Thank you again,

Elliott Dawkins

---

From: Hilton Fordham
Sent: Tuesday, June 18, 2013 7:48 PM
To: Elliott Dawkins
Cc: Laura Adams; tbolton@nethr.net<mailto:tbolton@nethr.net>
Subject: Re: Time

Elliott,

I will look into this in the morning and speak with Laura about how the missed hours will be compensated.

Sent from my iPhone

On Jun 18, 2013, at 6:52 PM, "Elliott Dawkins" <EDawkins@jclewishealth.org<mailto:EDawkins@jclewishealth.org>> wrote:

I found the issue. For some odd reason I did not clock in or out on 6/12-6/13. (12.75 hours)

This is highly unusal. That is the day descrepancy. Please forgive the oversite on my part.

I knew something was missing.

Thank you,


Elliott Dawkins

# RE: Scanned documents

Courtney Staley
**Sent:** Wednesday, June 19, 2013 9:00 AM
**To:** Elliott Dawkins
**Cc:** Courtney Staley

Good morning Elliot,
I will get your PTO out of my box and you will get an email to let you know if it is approved. Thanks.
Courtney Staley, RN

---

**From:** Elliott Dawkins
**Sent:** Wednesday, June 19, 2013 6:26 AM
**To:** Courtney Staley
**Subject:** RE: Scanned documents

Good morning Ms. Courtney,

I did place the scanned documents inside of your box with my name attached. Also, I submitted a PTO form as well. Ms. Carolyn has agreed to cover the friday and saturday for me.

Have a great day,

Thank you,

Elliott Dawkins

---

**From:** Courtney Staley
**Sent:** Tuesday, June 18, 2013 11:34 AM
**To:** Ann Crawford; Elliott Dawkins; Kanayochukwu Onyejeli; Leslie Ayers; Mary Tilley; Melissa Gadson; Monique Palmer; Rosairo Doyle; Sondra Graves; Stacey Blome; Stephen Smith; Tanisha Cannon; Theresa Critton; Tonya Dawkins
**Cc:** Courtney Staley
**Subject:** Scanned documents

Nursing Staff,
Please put scanned documents inside of my box with your name on it. Thanks in advance.
Courtney Staley,RN

# RE: Time

Elliott Dawkins

**Sent:** Thursday, June 20, 2013 11:56 AM
**To:** Hilton Fordham
**Cc:** Laura Adams; tbolton@nethr.net

Thank you so much that_will be fine.
Thank you,
Elliott Dawkins

---

From: Hilton Fordham
Sent: Wednesday, June 19, 2013 7:55 PM
To: Elliott Dawkins
Cc: Laura Adams; tbolton@nethr.net
Subject: Re: Time

If directed deposited it will not be received until Friday?

Sent from my iPhone

On Jun 19, 2013, at 7:50 PM, "Elliott Dawkins"
<EDawkins@jclewishealth.org<mailto:EDawkins@jclewishealth.org>> wrote:

I just reread your previous email. Is it to late to have it direct deposited. If not that is fine. Thank you again,

Elliott Dawkins

---

From: Elliott Dawkins
Sent: Wednesday, June 19, 2013 6:38 PM
To: Hilton Fordham
Cc: Laura Adams; tbolton@nethr.net<mailto:tbolton@nethr.net>
Subject: RE: Time

Thank you Sir,

I have a meeting in the morning at 9am and 2pm. Is between 11 and 12:30 a good time. I appreciate it greatly.

Thank you,

Elliott Dawkins

---

From: Hilton Fordham
Sent: Wednesday, June 19, 2013 4:36 PM
To: Elliott Dawkins
Cc: Laura Adams; tbolton@nethr.net<mailto:tbolton@nethr.net>
Subject: Re: Time

Elliott,

Your check will be available in the morning.

Sent from my iPhone

On Jun 19, 2013, at 1:03 PM, "Elliott Dawkins"
<EDawkins@jclewishealth.org<mailto:EDawkins@jclewishealth.org>> wrote:

I thank you for the hours. Unfortunately, I am not as financially sound as most individuals. This is a reason why I calculate my hours for the bills that I have

## RE: Direct Deposit

Elliott Dawkins
**Sent:** Wednesday, June 26, 2013 7:18 AM
**To:** Laura Adams

Sorry for the delayed response I was not able to converse via phone yesterday I didn't read response until about 4pm yesterday evening. I went to the job about 4:30pm June 25, 2013 and spoke with Me. Hilton and Mrs. Toni and we have it taken care of. It will be held this pay and begin again on the next. I thank you so much for finding out what happen. Thank was odd any other time I was issued an additional check this never happened. Hence only hearing that I received what the automation stated. Then there was no report on my payroll account to see for me t view the stub. If I would have seen the stub and seen that it was sent to my savings I still would have wanted this one stopped but I would have know where the additional funds were directed to. I hope this makes sense. I thank you and I am totally sorry for this during your time off. Please forgive. Thank you again.

Respectfully,

Elliott Dawkins

---

From: Laura Adams
Sent: Monday, June 24, 2013 11:33 AM
To: Elliott Dawkins
Subject: Fwd: Direct Deposit

Please see Toni's response.

Sent from my iPhone

Begin forwarded message:

From: Toni Bolton <TBolton@nethr.net<mailto:TBolton@nethr.net>>
Date: June 24, 2013, 11:29:39 AM EDT
To: Laura Adams <LAdams@jclewishealth.org<mailto:LAdams@jclewishealth.org>>
Subject: RE: Direct Deposit

Direct deposits stay the same unless we have authorization from the employee on a payroll change notice to change it. We cannot just go in and change it, this is for the employee and our protection. If he wants to change it for the next payroll he will have to submit a form and also inform us when to change it back if he wants.

Thanks,

Toni

From: Laura Adams [mailto:LAdams@jclewishealth.org]
Sent: Monday, June 24, 2013 11:24 AM
To: Toni Bolton
Subject: Fwd: Direct Deposit

Toni,

Please see Elliott's question below...will you please let me know how his next check will be handled??

Sent from my iPhone

Begin forwarded message:
From: Elliott Dawkins <EDawkins@jclewishealth.org<mailto:EDawkins@jclewishealth.org>>
Date: June 24, 2013, 11:21:49 AM EDT
To: Laura Adams <LAdams@jclewishealth.org<mailto:LAdams@jclewishealth.org>>
Subject: RE: Direct Deposit
Thank you for finding that out for me. I had no way of knowing that, since I only have a drafted amount sent to my savings account per payday. So how do I avoid this from happening in the future? Since this amount was not a actual payday but a payment. Does this mean that on the up and coming payday, since the amount already posted to my savings will it come out again?

Thank you,
Elliott Dawkins

**PTO**

Elliott Dawkins

**Sent:** Thursday, June 27, 2013 7:47 AM

**To:** Courtney Staley

Good mornin Ms. Courtney,
I would like to retract my PTO request for August 2nd,3rd, and 4th of 2013. I will notify Ms. Carolyn of this.
Thank You,
Elliott Dawkins

# RE: pay check 6/28/2013

Elliott Dawkins

**Sent:** Tuesday, July 02, 2013 9:39 AM
**To:** Hilton Fordham

Thank you Sir

---

From: Hilton Fordham
Sent: Monday, July 01, 2013 11:39 PM
To: Elliott Dawkins
Cc: Toni Bolton; Laura Adams
Subject: Re: pay check 6/28/2013

Elliott,

In processing payroll Toni overlooked your hours of overtime. Overtime pay will be available tomorrow, July 2.

Sent from my iPhone

On Jul 1, 2013, at 3:35 PM, "Elliott Dawkins" <EDawkins@jclewishealth.org> wrote:

> Hello Mrs. Toni,
> Yes it was. The dates for the meetings were 6/21,22 and 7/1 2013.
> Thank you,
> Elliott Dawkins

Elliott Dawkins

To:
M
Lauren Milmine
Sent Items
Thursday, July 28, 2011 10:34 PM

Good evening,

I guess I am still some what baffled. Would the seven days for a week counted as July 12th thru July 19th and the 20 thru 26th. That would be the hours paid during these weeks to make the paycheck for the 26th. Am i correct? So, I will calculate the hours that i worked during each week to determine hours worked for my pay check. Is there a way that I can find out my exact punches for the past weeks from the from the 12th. The new system that we were paid beginning July 1 thru July 11. The days with a seven (7) day work week would be the July 1st thru 8th and the  second week would only carry two (2) working days of July 9th thru July 11th. I have a sample below of the possible pay weeks below. Each week has a seven (7) day work week. Please correct this if my calculations are incorrect. If this is correct I can forecast the payroll and I understand it fully.

Projected week ending periods are as follows:
July 1st - 7th
July 8th - July 11th (Payday 15th)
July 12th - July 19th
July 20th - July 26th (Payday 29th)
July 27 - August 2nd
August 3rd - August 9th (Payday 12th)
August 10th - August 16th
August 17th - August 23rd (Payday 26th)
August 24th - August 30th
August 31st - September 6th (Payday 9th of September)

Thank you for taking the time explaining. I really do appreciate it so much.
Thank you again,

Elliott Dawkins

in the nurses lock box.

---

**From:** Elliott Dawkins
**Sent:** Saturday, August 17, 2013 7:13 PM
**To:** Hilton Fordham
**Cc:** Laura Adams
**Subject:** RE: Time/Punch

Hello Sir,

Yes, all of the paystubs that belong to me have been retrieved prior to this request as well as the one's that were requested as of July 11, 2013. When we spoke (in the closet July 11, 2013 approximately 4pm) you stated that you were going to get with Mrs. Toni at that time. I have looked again in the box in the closet as well as on momentum pay records online just to be sure before I reinitiated this request.

Thank you Sir,

Elliott Dawkins

---

**From:** Hilton Fordham
**Sent:** Friday, August 16, 2013 8:47 PM
**To:** Elliott Dawkins
**Cc:** Laura Adams
**Subject:** Re: Time/Punch

Elliott check the nursing closet for all pay stubs not received. If you are missing any please inform me so that Toni can provide them.

Sent from my iPhone

On Aug 16, 2013, at 8:44 PM, "Elliott Dawkins" <EDawkins@jclewishealth.org> wrote:

> Hello,
>
> I wanted to inform you of a time punch issue before next week so it can be corrected. I clocked in at 6:45p on 8/13/2013. When i went to clock out at 730am it stated that i did not clock in and the time was blank. When i clock in since that last issue paycheck before last i have since looked at the screen to verify that the punch was accecpted. I did the same on 8/13/2013. Appearently, when i clocked out instead of 8/14/2013 it was still in the pm setting for 8/13/2013.
>
> Also, the payroll stubs (from all extra cut checks) that i requested from you on July 11th when i picked up the check for underpayment from you in the closet that afternoon. I have not heard anything yet and wanted to check with you.

# RE: PTO request

Elliott Dawkins

**Sent:** Wednesday, October 30, 2013 7:15 PM
**To:** Courtney Staley
**Cc:** Carolyn Maynor
**Attachments:** elliott pto request.doc (31 KB)

Ms. Courtney,

I just seen email from Mr. Jamar in reference to PTO. I just wanted to resend my previous request. I did not fully understand his email to say that if you already submitted to disregard so i just wanted to cover all my bases.

Thank you,

Elliott Dawkins

---

**From:** Elliott Dawkins
**Sent:** Friday, September 20, 2013 12:24 AM
**To:** Courtney Staley
**Cc:** Carolyn Maynor
**Subject:** PTO request

Ms. Courtney,

I have attached a copy of my requested PTO form. I spoke with Ms. Carolyn and she stated that she would work my Dec 6th and 7th, of 2013. I will have her send a confirmation email to that fact as well. I shall contact her today and have it sent expeditiously.

Respectfully,

Elliott Dawkins

Gmail

elliott dawkins <elliottdawkins@gmail.com>

**jc lewis fraud**

1 message

**elliott dawkins** <elliottdawkins@gmail.com> Wed, Mar 27, 2013 at 6:05 AM
To: elliott dawkins <elliottdawkins@gmail.com>

# !!!Please Investigate!!!!!
# J.C. Lewis Health Clinic
# 125 Fahm Street
# Savannah, Georgia 31401

There is great deception in this facility. Listed below will be itemized listing pictures and accompanying memos of retaliation. This intimidation and bullying has to stop.

The first and foremost is the social worker acquiring of funds from clients. A client resided here for 7 months and was charged 30% of his social security entitlement. He paid $600 of his entitlement which is believed to have gone into the pocket of and individual. This is not common practice when a person is awarded a social security entitlement. It is not a document upon intake when the clients are admitted to the facility. The social security check was cashed and the money was taken on Friday March 22, 2013 and the individual left the facility on March 26, 2013. We are able to contact this person for testimony and verification. There were 2 people that resided here for 2 years and no monies were charged. Another for a year and not charged. I've heard of this happening to another client that was considered "slow".

The CEO boyfriend was shot and all his medical treatment and needs were obtained through the clinic afterhours and mostly undocumented. Staff can verify treatment and testing. He has getting blood test and other exams under pretenses. She allowed him to run a car washing service in the parking lot of the facility. Utilizing the facilities water and charging for his services and not giving proceed back for the use of water. There has been others before that asked could they do the same and she told them no because they wanted to use the facilities water supply. He did the so called waxing of the floor last year two times and was paid for doing so. His father does the "landscaping" and receives $500 for services. Its not nothing here its all concrete?

The Executive officer is charging individuals for workout classes for his personal gain and is using the facility (chapel) for workout area. These funds should partly go back to the facility for money to buy the clients much needed and adequate meals and supplies.

The "sanitation engineer" is the aunt of the CEO. She come in, clocks in and leaves to take her kids to school on the clock. As well as spends majority of her time away from the facility playing

the video poker and lottery machines everyday on the clock. This is at the knowledge of the CEO. Pictures submitted will show great lack of cleanliness I n the facility. Clients come inside the facility and it is filthy to be a health clinic. Dust is in abundance.

The clients that reside in the facility receive old outdated food, diabetic clients are not allowed diabetic diet they are given the same food as other clients causing elevated blood sugar levels. The books, records and charts can verify. The pictures will show as well molded food in the refrigerator. Mold under the kitchen sink. The clients are homeless and deserve to be treated as individuals. But since they are homeless they are threaten with being discharged. The clients don't have any activities to help them adjust back into society. They remain here all day and are reprimanded if they stay in there bed and reprimanded if they get in the way of the day staff. They are talked degradingly by the HR manager on several occasions that I witnessed personally. Others may verify. The clients wash there clothes with lemon scented floor cleaner for detergent. Often the milk is curled and sour. The facility should provide adequate meals for diabetics or just don't accept them if they are not willing to provide the appropriate diet that is needed.

A man died recently here and family is still looking for wallet and phone that belong to him. The last time it was seen was in the HR managers possession.

There should be monies allocated to give this community a clean facility, proper treatment, This community and the clients deserve people that care and are not just taking the ride. This is not fictional, this is factual and truth. Please investigate and expose those that do not cause or care for the right of the individuals we serve. Our passion is for this community and cleanliness, rightness, truth and fairness is what they all deserve. The employees are a different matter all together of how they are threaten and intimidated on a whole different level. It its truly unfair of the injustice that is being handed out for everyone to take. And if your not part of the upper management clique your out the door if you speak on any of these matters. You can not address upper management and some employees because they are either related or really really close.

So with all this said we turn to you. Other clients will be sending there issues that has been document while they were here. I will be searching for others to tell you there story since they are no longer here they do not have the fear over them.



**elliott dawkins <elliottdawkins@gmail.com>**

## (no subject)

1 message

**Elliott Dawkins** <elliottdawkins@yahoo.com> Wed, Mar 27, 2013 at 10:39 PM
To: elliottdawkins@gmail.com

I would like to add that on several occcasion when the staff goes to Second Harvest food bank for supplies for the client and when they return to the facility and the sanitation enginer, social worker, and other employees take the items and load them in their vehicles. To make it even worst they make the clients bring in the left overs. We can get in contact with those individuals that witnessed and brought the items inside.

The pictures dates have been blacked out but the time and dates are current and can be verified.

Tonya Dawkins

Elliott Dawkins

Sondra Graves

Karen Grant

Bonus Sign Out Sheet December 6 Payout

1.  Elliott Dawkins

2.  Mary Tilley

3.  Joshua Obianjunwa

4.  Tonya Dawkins

# FW: REQUEST FOR MORE CLARITY

Elliott Dawkins
**Sent:** Tuesday, November 19, 2013 9:53 PM
**To:** tywiley242003@yahoo.com
**Sensitivity:** Confidential

---

**From:** Elliott Dawkins
**Sent:** Tuesday, November 19, 2013 9:46 PM
**To:** Joshua Obiajunwa
**Cc:** Sondra Graves; Laura Adams; Rena Douse
**Subject:** RE: REQUEST FOR MORE CLARITY

Great evening Mr. Joshua,

I just read this email and personally I am hurt, disturbed, confused and overall baffled at these accusations that pertain to myself. I can not speak for anyone else except for myself. I will try to address any and all of your concerns that are listed below.

First and foremost, I must say that it is always a great pleasure working with you; for the security and assistance that you provide on the weekends that you are scheduled. But also the safety that comes with that added security. I know that when you are here that there is someone to help me if a situation arises. I thank you for all that you do and have done working with me during my shifts.

- That being said, the issues that you have addressed in you email I too would like enlightenment upon, due to the sole premise that you are correct you only work under myself and Mrs. Sondras' supervision. Now as stated I can only speak for my self on the clocking in and out issue. I will gladly try to arrange a meeting with Mrs. Sondra so that we can "collectively" make a response to this email. I hope that this current email will provide clarity for my individual statement. If not I can write/or email another that is exclusively to the matter(s) that you deem necessary.
- Every time that I need you I can always locate you. This is another reason why I am at ease with your presence in the building. Just in case something happens I know that you are always there to assist me and address matters with the individuals and take corrective actions. I appreciate that added comfort. So since we have worked together, I have never had a problem knowing where you are and you location in the building.
- I can not attest to finding you asleep. Since our tenure here working together you always come to me either in the pod or in the clinic while I am scanning. I can honestly say that I did not really think overly hard because I didn't have to, to remember if I found you asleep because of that fact stated above.
- The flip-flops is something else I can never say that I have seen you wear any at all during any of our shift (s) together. I have seen the brown shoes that you mentioned and tennis shoes. I do recall one time you came in hard shoes (dress shoes) and changed.
- I will get a copy of my phone history to show that you did call me on last Saturday. It will provide the time that you called. It may only show a minute call because I don't believe that we were on longer than that.

I want to say that I have never made any complaint of your duties or lack there of to anyone. Because I have no complaints at all. As mentioned, I can only speak for myself. I can say that I did hear that when you are working with a couple of the female nurses they stated that "they felt more safe being here in the building opposed to

being left alone at night". Its the added security that you bring to the table if something goes down you just don't feel as though your all alone to handle a situation. I thank you for your diligence.

I must say I understand the unhealthiness of working under stressful conditions. Trust is a mainstay of team work. I love and encourage team work that's the military side of me. I must know that someone has my back. And if you feel that protection is compromised then it always have you thinking. That is a unnesessary stressor. I enjoy the night shift team and I am not the one who made any accusations about you. I am a firm believer in addressing issues head on and getting over them together so you can move on. That way you dont hinder productivity. If you want to talk to me face to face that will be fine, I will make myself available. Because I know for a fact you can say anything in a letter. I am a personal person, I like to talk and filter issues. I would like to filter this to clear my name and move on. One thing I don't want you to come to work and think that I am talking behind your back. That is just not how I am built.

I will get with Mrs. Sondra as stated above to "collectively" address any and all of your concerns. Since we work different shifts, I will let you know as soon as I can coordinate a time and place via email and have a resolve for you from my end soon as well as my phone history.

If you do decide to leave I do not want you to go out thinking ill of me.

Thank you Sir and I will follow up with you soon.

Respectfully submitted,

Elliott Dawkins

---

**From:** Joshua Obiajunwa
**Sent:** Monday, November 18, 2013 4:32 AM
**To:** Rena Douse
**Cc:** Elliott Dawkins; Sondra Graves; Laura Adams
**Subject:** REQUEST FOR MORE CLARITY

Hello Rena,

Per my conversation with you, I will like and appreciate it if you could please provide or ask the individuals mentioned for more clarity as to the following complaints you received:

- Clocking in and out: One of the complaint was "People clocking me in and out when am not in the building" I am not sure who those particular people are, the only two individuals who am under their supervision weekends am scheduled to work are Ms. Sandra Graves and Mr. Elliott Dawkins. Kindly ask them individually or collectively to please expand on this point and if possibly provide the day (s) and times when I requested this favor. I also remember you mentioned something about Mr. Hilton being called to verify if I clocked in and he stated 'I was not'. Am trying to make sense of that complaint and reason why Mr. Hilton was asked to verify me clocking in, was the point to collaborate the complaint that someone has been clocking me in ( Which meant Ms. Sondra is the individual clocking me in and out)?, or was it to prove that I come in the building and then disappeared? If these were the points intended, then both are false and as such should be called just that. Since I was never in the building to begin with.
- Being in the Building and Not being Seen: The other complaint was the nurses said "Sometimes am no where to be found" again the only two people I work under their direct supervisions are Ms. Sondra and Mr. Elliott, Please kindly ask if they could explain or give more details as to when, date and time approximation, that these instances occurred so I could have a better understanding and perhaps recall the situation. The fact is, there are one of two places I could be when am not doing the floors (those are the front desk or the dinning area). I don't think its had locating someone in one of those two places.
- Being Asleep When Staff members are around: I am not sure which staff member(s) since it was never brought to my attention. The two supervisory staff individuals who are always there when am working are Ms. Graves and Mr. Elliott, and I don't remember any situation or instance where they warned or cautioned me for taking a nap when am suppose to be doing something else. As I mentioned over the phone to you, there have been instances/occasions when other staff members do come to the building on weekends, most times am the one who either opens the gate, the back or front doors to let them in, there have also been some instances in which staff members were already in the building before I get there. A few that I remember include: Ms. Shana Fennell, I have seen Mr. Hilton in the building in the past, on one occasion he was already in prior to me getting to work and on another occasion I let him in to park his ca, I have also let Ms. Suprena in

(this was a while back) on numerous occasions, most recently, the young man that works at the back (cant really remember his name now), I let him in for two or three consecutive weekends when he came to the facility. In most of these instances I was mostly at the front desk, sometimes they call the front phone or come up to the small gate and as soon as I see or notice anything I head towards the door. On a very few occasion do they come and sometimes see the gate open and come in, even with that I do still secure the building when they leave. If am not mistaken part of my 12hr shift include an 1hr break, what are the do's and don'ts associated with that hour? Am I not allowed to use it when and how I need it, perhaps half-way through cleaning or perhaps at the end of cleaning which normally would be anywhere between 4:30 and 5:30am, if I decide I want to sit down and break (nap) for 45 or so minutes, am I not allowed?

- Having Flip-Flop while working: As I stated on the phone, I come to work with mostly two different types of shoes; a tennis shoes and a soft bottom covered brown shoe (which I will gladly bring and show you or take a picture and send to you if need be), which I use when am doing the floors to minimize sound and noise so not to disturb the residents who are normally asleep when am cleaning. I have also been in the building during the day time and have seen nurses wearing those lofty rubber-like light-blues front covered but back open foot wears in the nurses station. what really constitute as flip-flop? I thought it is any type of footwear that exposes the more foot that it covers and also has a split around the toe. Am not sure who said I had flip-flops on, but if I did I will make note not to have any with me while at work.
- There was also a situation you said Ms. Laura was going to talk to me about, I will wait for her call and to hear from her.

Please be rest assured that I know I was totally at fault for the breakdown in communication and for what happened today, in the sense that I did not call you to let you know. This is not a typically act from me, I have always informed you of situations when they come up, its just that in this case I thought it was something I could go back to the house have everything done and be back in no more than 45 minutes. I was never in the building as such the statement that "I left the building without telling or letting the nurse know is incorrect, given I was on my way hear when I got the call, I immediately called Mr. Elliott to let him know I was going to be 30-45 minutes late. Mr. Elliott informed me he was not working today but to give Ms. Soundra a call she could be the one working, I did and stated the same thing I said to Mr. Elliott and she responded okay, I myself am on my way and should be up there in about 6 minutes. I should have called you which typically is what I have done, this is in addition to letting the nurse am scheduled to work with know. I take full responsibility for that and welcome any disciplinary action

that comes with it. I will be leaving probably at 6:45am to get you a copy of the police report, I want to have enough time to get you a copy and make it back home before my wife leaves for work.

Lastly, I will really like for this complaints to be thoroughly looked into and the findings or lack off communicated to me in a timely manner. If need be, a meeting can and should be called with all individuals mentioned or involved in this situation so it can be resolved. Two things I will not like to see happen:

Firstly, not knowing made those accusations while continuing to work under a cloud of suspicion as it relates to the two individuals that I work under, wondering which one of them could have been responsible for these accusations.

Lastly, I will not want for this to go the same way my meeting went as it relates to Mr. Hilton and the email he sent dated 7/1/13, where he stated that 'my failure to clock in and out on a consistent basis....' after which I was asked what I would like to see happen at the end, my request was for a retraction mail be sent if his point were not founded. I was told that a follow up would occur but till date I have not gotten any response to that effect. Was I wrong in my explanation or was Mr. Hilton justified in sending me the mail. I still have not heard anything either way.

I have often/always thought I went beyond what was expected of me as it relates to my duties and responsibilities (with the exception of not calling), but hearing of all these mountain of complaints and reports against what I do, or did not do, and how I act while am suppose to be at work is really concerning. what is even more concerning is not being made aware of it immediately so it could have be addressed sooner than now.

I am a believer of people not over staying their welcome, and one why of knowing is when you are being told 'It seem you are of no use to an Organization or institution' no matter how small or insignificantly considered the part you were assigned to play, as such your more a liability. I took on responsibilities here prior to it being officially assigned or added to me with no questions asked. I say this with all humility and appreciation for the opportunity given, but as soon as these stated issues are brought to rest I will more than likely be putting a two week resignation notice. Subjecting ones self to work under this atmosphere with

To whom it may concern,

We would like to inform you of the issues here at JC Lewis Health 125 Fahm Street Savannah, Georgia.

We are employees, residents and clients. The reason is to have addresses the issues of money being paid to Aretha Jones boyfriend, his father, for jobs that are conflict of intrest. He uses the facility for his care after hours when he was shot. And treatment was to be kept quite.  Jamar Frink charges us for exercise program and uses the chapel here for personal gain. Management uses the building for weddings, meetings, and other functions and makes us stay away. When we asked to use we were told no its not available for that. Jamar frink has a rolling store in the building and charges us. We are talked down to and threaten if we don't want our job. We don't have soap to wash with. Hilton has been complained against an no action has been taken. The cleaning staff is Ms. Jones family as well as others. Florence sleeps on the couch and plays lottery during the day. Clocks in at 8 and doesn't return until after 10 all on the clock. We cant say anything who will go against the boss. Floerence steals from us when they buy supplies. We see here take food to her car and has us to help her bring it in when they go to the food bank. When food is brought in for us they take it for them selves. Phylis charged me 600.00 for staying at JC Lewis when I got my disability and no one else has. I was told I stayed to long. Others stayed longer and did not get charged. The building is filthy and unclean. The only time it get clean when someone visit. The dust on the vent is so thick it was just cleaned when visit was to hapeen last month. Floors are just waxed by her boyfriend this week for presentation for you.

This is a health facility and the money should go back into us the clients not just into their pocket.

If you do a investigation and follow the money and everything addressed you will find all to be true. Turn this place around to do what is right for us.


Signed,


The People

numerous complaints of dissatisfaction will be unhealthy.

I look forward to hearing from you.

Thanks.

# RE: Meeting

Elliott Dawkins
**Sent:** Monday, November 25, 2013 6:57 PM
**To:** Jamar Frink
**Cc:** Aretha Jones; Rena Douse; Courtney Staley; Hilton Fordham; Laura Adams

Great evening Mr. Jamar,

I just awoke and heard/seen the email and phone messages from yourself and Mr. Hilton. As stated in my phone message that I left on your phone that there was a discrepancy between the times that Mr. Hilton stated 11:30 and yourself at 11a tomorrow November 26, 2013.

As stated per my voice mail, I have a doctors appointment in Charleston tomorrow. For this appointment I commute on the DAV shuttle and it does not return to Savannah until about 5 to 5:30. I can get off at the Greyhound bus station and come over afterwards. If Wednesday is an option let me know ahead of time so that I can plan the bus route and time, because I wont have a car on that day.Thursday I have another appointment/meeting as well at 9:45am. It will probably last about a hour and a half. Thank you for the notification Sir and I look forward to you communication.

Respectfully,

Elliott Dawkins

---

**From:** Jamar Frink on behalf of Aretha Jones
**Sent:** Monday, November 25, 2013 9:16 AM
**To:** Aretha Jones; Elliott Dawkins; Rena Douse; Courtney Staley; Hilton Fordham; Laura Adams
**Subject:** Meeting
**When:** Tuesday, November 26, 2013 11:30 AM-12:00 PM.
**Where:** JCL

# Another ASAP Meeting

Aretha Jones

**Sent:** Monday, November 25, 2013 1:07 AM
**To:** Jamar Frink
**Cc:** Laura Adams; Rena Douse; Courtney Staley; Hilton Fordham; Aretha Jones; Elliott Dawkins

Jamar please schedule a meeting with all parties that are copied on this email ASAP; this week.

Thanks

Aretha Jones

Aretha Jones

Elliott Dawkins

To:

Laura Adams; Hilton Fordham; Aretha Jones; Rena Douse; Courtney Staley

Sent Items

Wednesday, November 27, 2013 10:29 PM

Good Evening everyone,

I would like to thank you for the advancement on this pay check, receiving it before Thanksgiving is greatly appreciated, thoughtful as well as needed. However, my check is short once again. I pride myself at being a great manager of my finances when given the resources. I enjoy the community that I am able to serve and the opportunity that it gives me to help them. Now through no fault of my own I am delinquent in my mortgage payment and other bills since my October shortage. Now once again this pay as well. I am trying to "rob peter to pay paul". As stated in a previous email, I am not as financially sound as most and can not afford to miss payment for any days that I worked. I know that it is not any of your responsibility of how I spend my the finances that I work for; or if I make bad business decisions with those finances. But, If any of you can enlighten me on the reason that my paycheck is consistently short PLEASE, PLEASE, PLEASE, I am begging you to inform me and make me aware. That way I am aware and that way I can immediately correct it on my end.

Elliott Dawkins

The message you tried to print is protected with Information Rights Management. The sender didn't give you the rights necessary to print the message.

RECEIVED
DEC 27 2013
EEOC-SLO

Elliott Dawkins

Actions
To:
Laura Adams
Cc:
Hilton Fordham; Aretha Jones; Rena Douse; Courtney Staley
Sent Items
Wednesday, November 27, 2013 10:54 PM

You forwarded this message on 11/27/2013 11:34 PM.
Mrs./Ms. Laura,

Thank you for the reply, On October 11, 12, 13, of 2013 I was approved for PTO. Which did not get paid
for. That is 36 hours at a rate of pay of $15.50 per hour equates to $558.00. I will forward that approval
after this email is sent. This pay check date includes November 14 to November 27, 2013. I worked the
following days November 14 (12.75), November 15 (12.75), November 16 (12.75), November 19 (12.75)
November 22 (12.75), November 23 (12.75), November 24 (12.75). Please check my math behind me.
That equates to 89.25 hours worked for this check period. I was paid for 65.62 hours. That is a
difference of 23.63 hours multiplied by $15.50 rate of pay equals $366.27. That is a total between the
2 occurrences of $924.27. If you can please double check my math and if I we agree upon the total owed
to me. Can that please be corrected and place into my account without the $90 going into the other
account.
Thank you so much for your attention,
Elliott Dawkins

Laura Adams

To:
Elliott Dawkins
Cc:
Hilton Fordham; Aretha Jones; Rena Douse; Courtney Staley

Wednesday, November 27, 2013 10:39 PM

You replied on 11/27/2013 10:54 PM.
Elliott,

Please make me understand how your paycheck is being shorted. You are
hourly and therefore Momentum is simply paying you from the hours that you
are punching in the timeclock.
Thanks.

Laura

Sent from my iPhone

Hilton Fordham

Actions
To:
Elliott Dawkins
Cc:
Laura Adams

Monday, December 02, 2013 9:49 AM

You forwarded this message on 12/17/2013 7:40 PM.
Elliott,

First let me apologize for the mishap with your pay. On this last
payroll Toni  did not pay you according to the hours that were sent
over on the payroll report, which resulted in a shortage of your pay.
Your hours for October was not sent over but has since been
corrected. Your pay will be deposited in your account on tomorrow.

Sent from my iPhone

EEOC Form 161 (11/09)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To: **Elliott D. Dawkins**
**2071 Grove Point Road**
**Savannah, GA 31419**

From: **Savannah Local Office**
**7391 Hodgson Memorial Drive**
**Suite 200**
**Savannah, GA 31406**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **415-2015-00120** | **Diego Torres, Investigator** | **(912) 920-4492** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Holly H. Aguilar,
Director

NOV 25 2014
*(Date Mailed)*

Enclosures(s)

cc:

**J C LEWIS HEALTH CLINIC**
**Hilton Fordham**
**Human Resources Director**
**125 Fahm Street**
**Savannah, GA 31401**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Savannah Local Office**

7391 Hodgson Memorial Drive, Suite 200
Savannah, GA 31406
Savannah Direct Dial: (912) 652-4234
FAX (912) 652-4248

NOV 25 2014

Elliott D. Dawkins
2071 Grove Point Road
Savannah, GA 31419

EEOC Charge Number: 415-2015-00120
Respondent: J.C. Lewis Health Clinic

Dear Mr. Dawkins:

Your charge of employment discrimination has been reviewed by EEOC in accordance with the Commission's processing procedures. This letter will serve as an explanation concerning our determination of the merits on the above-referenced charge of discrimination. The determination relies on the following information:

On November 6, 2014, you filed a charge of discrimination alleging that you were discriminated against in retaliation for previously filing EEOC Charge No. 415-2014-00203, in violation of Title VII of the Civil Rights Act of 1964, as amended and Title I of the Americans with Disabilities Act of 1990, as amended.

Based upon the examination of the charge file information, we have determined that EEOC will discontinue further processing of your claim. Accordingly, you will have to file a private lawsuit if you want to continue to challenge the alleged discrimination. This practice is consistent with the Commission's Priority Charge Handling Procedures when the office has sufficient information from which to conclude that it is not likely that further investigation will result in a violation of the statutes we enforce.

Enclosed please find your **Dismissal and Notice of Rights and Information Sheet**. **If you want to pursue your charge further, you have the right to sue the employer named in your charge in U.S. District Court within ninety (90) days from the date you receive the enclosed notice.** Please read the documents carefully.

Sincerely,

Diego Torres
Senior Investigator



## EMPLOYEE ASSISTANCE PROGRAM (EAP)

### EAP

**Overview:** Everyone faces difficult periods in his or her life. Personal problems are part of what it means to be human, and effectively dealing with them makes us better prepared to overcome future challenges. When a personal problem is making life difficult for you, it can also affect your job performance. The purpose of the Employee Assistance Program (EAP) is to help you deal with life's rough spots. When you seek help with a personal problem, your home life improves, work goes better and everyone benefits.

**What is an EAP?** Your EAP is a professional, **confidential**, consultation service provided by Prudential (ComPsych program). Everything discussed in consultation is kept completely confidential. Your EAP includes up to 3 face to face sessions with a professional. This service is available to you and your dependents.

**PRUDENTIAL EAP**
www.guidanceresources.com
Company ID: GEN311 Phone: 800-311-4327

EAP Complete Plan includes:

**• EAP:**
Three face-to-face visits per occurrence at no per session charge to the employee with a local counselor to help address any personal concerns (in lieu of telephonic counseling).

**• Legal Resources:**
When a legal issue arises, their attorneys are available to provide confidential support. If you require representation, you can be referred to a qualified attorney in your area. You can receive a free 30-minute consultation with a 25% reduction in customary legal fees thereafter.

**• Financial Resources:**
Financial professionals are available to discuss your financial concerns and provide you with financial tools and information.

**• Work-Life Resources:**
Information and referrals on child care, elder care, adoption, relocation, and other personal convenience matters.

**• GuidanceResources® Online:**
Access to extensive content to help with personal or family concerns, helpful planning tools, discount programs, and more.

**YOU WILL RECEIVE A WALLET EAP CARD AFTER OPEN ENROLLMENT AND INSTALLATION OF THE PLAN IS COMPLETE**

This employee benefit summary is provided for employee communication purposes only and is not a guarantee of benefits. For additional and more complete information please refer to the current employee handbook or contact the Human Resources Department.

# FUTURE APPOINTMENTS FOR: Account # 1577 - ELLIOTT DAWKINS

| DATE | TIME | DAY | LOC | DEPT | ID | PROVIDER | REASON | STATUS |
|---|---|---|---|---|---|---|---|---|
| 06/21/13 | 10:00 am | Friday | 001 | | SWD | Sybil W. Dudley, LCSW | Initial | K kept. |
| 06/24/13 | 2:00 pm | Monday | 001 | | SWD | Sybil W. Dudley, LCSW | Therapy | S |
| 07/01/13 | 10:00 am | Monday | 001 | | SWD | Sybil W. Dudley, LCSW | Therapy | S |

**LCSW Solutions, LLC**
9998 Ford Ave. Ste. 5
Richmond Hill, GA 31324
912 756-7136

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT

for the

Southern District of Georgia

ELLIOTT DUANE DAWKINS [Pro Se]
*Plaintiff*
v.
J.C. LEWIS PRIMARY HEALTH CARE
*Defendant*

Civil Action No.

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To: J.C. LEWIS PRIMARY HEALTH CARE / ARETHA JONES
*(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)*

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within 45 days *(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date: 02/24/2015

*Signature of the attorney or unrepresented party*

ELLIOTT DUANE DAWKINS [Pro Se]
*Printed name*

2071 GROVE POINT ROAD
SAVANNAH, GEORGIA 31419
*Address*

ELLIOTTDAWKINS@GMAIL.COM
*E-mail address*

(912) 507 - 9984
*Telephone number*

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT

for the

Southern District of Georgia

ELLIOTT DUANE DAWKINS [Pro Se]
*Plaintiff*
v.
J.C. LEWIS PRIMARY HEALTH CARE
*Defendant*

Civil Action No.

## WAIVER OF THE SERVICE OF SUMMONS

To: ELLIOTT DUANE DAWKINS [Pro Se]
*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from 02/24/2015, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: 02/24/2015

_______________________
*Signature of the attorney or unrepresented party*

_______________________
*Printed name of party waiving service of summons*

ELLIOTT DUANE DAWKINS
*Printed name*

2071 GROVE POINT ROAD
SAVANNAH, GEORGIA 31419
*Address*

ELLIOTTDAWKINS@GMAIL.COM
*E-mail address*

(912) 507-9984
*Telephone number*

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

***Southern District of Georgia***

ELLIOTT DUANE DAWKINS [Pro Se]

V.

J.C. LEWIS PRIMARY HEALTH CARE

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

TO: (Name and address of Defendant)

J.C. LEWIS PRIMARY HEALTH CARE
C/O ARETHA JONES
125 FAHM STREET
SAVANAH, GEORGIA 31401

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

ELLIOTT DUANE DAWKINS [Pro Se]

2071 GROVE POINT ROAD

SAVANNAH, GEORGIA 31419

an answer to the complaint which is served on you with this summons, within 60 days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

Scott L. Poff

CLERK

02/24/2015

DATE

(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| Service of the Summons and complaint was made by me[1] | DATE |
|---|---|
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: ____________________

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: ____________________

☐ Returned unexecuted: ____________________

☐ Other (specify): ____________________

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on ____________________ ____________________
Date *Signature of Server*

____________________
*Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

United States District Court
Southern District of Georgia

______________
Division

ELLIOTT DAWKINS
Plaintiff

v

S.C. LEWIS PRIMARY HEALTHCARE
Defendant

Case No ______________

CERTIFICATE OF SERVICE

This is to certify that I have on this day served all the parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF") which was generated as a result of electronic filing.

Submitted this 23 day of FEB, 2015

By s/ [signature]
Attorney Name
Address
ELLIOTT DAWKINS
2071 GROVE POINT ROAD
SAVANNAH, GA 314[illegible]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**_________________ DIVISION**

*[Enter the full name of the plaintiff in this section]*

ELLIOTT DUANE DAWKINS

______________________________

______________________________

**Civil Action No.** ______________
*[to be assigned by Clerk]*

v.

*[Enter the full name of each defendant in this action. If possible, please list only one defendant per line.]*

J.C. LEWIS PRIMARY HEALTH CARE

ARETHA JONES

HILTON FORDHAM

LAURA ADAMS

COURTNEY STALEY

______________________________

______________________________

______________________________

***If allowed by statute, do you wish to have a trial by jury?*** ***Yes*** _X_ ***No*** ___

***[If any answer requires additional space, please use additional paper and attach hereto]***

**I. PREVIOUS LAWSUITS**

***A. Have you begun other lawsuits in state or federal court dealing with the same Facts involved in this action?***

***Yes*** ____ ***No*** _X_

**B.** *If your answer to A is Yes, describe the lawsuit in the space below. [If more than one lawsuit, describe on another sheet using the same outline.]*

*1.* *Parties to this lawsuit:*

*Plaintiff:* ______________________

*Defendant:* ______________________

*2.* *Court:* ______________________
*(If federal court, name the district; if state court, name the county)*

*3.* *Docket Number:* ______________________

*4.* *Name(s) of Judge(s) to whom case was assigned:* ______________________

*5.* *Status of Case:* ______________________
*(For example, was the case dismissed? Settled? Appealed? Still Pending?)*

*6.* *Date lawsuit was filed:* ______________________

*7.* *Date of disposition (if concluded):* ______________________

**C.** *Do you have any other lawsuit(s) pending in the federal court?*

**Yes** _____ **No** X

**II. PARTIES**

*In Item A below, place your name and address in the space provided. [If additional plaintiffs, do the same on another sheet of paper.]*

**A.** **Name of Plaintiff:** ELLIOTT DUANE DAWKINS

**Address:** 2071 GROVE POINT ROAD SAVANNAH, GEORGIA 31419

*In Item B below, place the full name of the defendant, and his/her/its address, in the space provided. Use Item C for additional defendants, if any.*

**B.** **Name of Defendant:** J.C. Lewis Primary Health CARE

**Address:** 125 FAHM ST SAVANNAH, GEORGIA 31401

**C.** ***Additional Defendants (provide the same information for each defendant as listed in Item B above):***

ARETHA JONES.

125 FAHM STREET SAVANNAH GA 31401

HILTON FORD HAM

125 FAHM STREET SAVANNAH, GA 31401

LAURA ADAMS

125 FAHM STREET SAVANNAH GA 31401

COURTNEY STALEY

125 FAHM STREET SAVANNAH, GA 31401

## III. STATEMENT OF CLAIM

***State here, as briefly as possible, the facts of your case. Describe how each defendant is involved. Include also the name(s) of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheets of paper if necessary.***

I worked for J.C. Lewis primary health care from March 2009 until January 17, 2014. During my employment i was continual not paid for my correct hours worked and brought this to the of the management. This was on a consistent basis. I was never informed as to what casued these under payments and was sent to counseling for asking about the incorrectness of my pay. Department of Labor found that I was under paid and was correct about calculations. Aretha Jones stated that out of all of her 50 employees i was the only one that questioned pay. Aretha Jones made veteran choose between healthcare and his position with the company. Hilton Fordham and Laura Adams were over payroll and requested as to why was this

**III. STATEMENT OF CLAIM** - ***continued.***

being paid incorrectly. I asked when cash bonus was given to staff when could i pick mine up. I was told it was stolen out of the medication lock box that only nurses have access too. I worked at night and was told that it was mandatory to coordinated my uniform with the shift. I worked alone until the weekends. Two other males worked during the day and were not in uniform. They said that they were not buying uniforms. I asked did i have to purchase uniforms and i was told by Aretha Jones it is mandatory to be in uniform. The men continued to not follow requirements and were not reprimanded. Courtney Staley harassed me over simple items that i had not training or awareness of. I asked management fro help in the matter i stated that i did not know if it was because i was a man under her authority, because of my skin color. I never knew her or anyone that she is affiliated with i dont believe. But the intimidation continued. I was slander upon they told co worker that i stated that i was clocking him in for work and that i informed them that he was leaving the facility and coming to work in flip flops. This caused tremendous tension and i asked for help solving the matter. It was never addressed just ignored. I was fearful of the environment that they had caused for me to work in and it hindered my work environment.

## IV. RELIEF.

*State briefly and exactly what you want this court to do for you.*

Full and fair monetary compensation for 5 years of intentional harrasement mental anguish.

Compensatory damages for lost wages past and future.for emotional distress

Permanent injunction against future acts of discrimination, retaliation and harassment.

Immediate removal of those parties found guilty of discrimination, retaliation and harassment.

Punitive damages for willfull, gross negligence, malicious and oppressive acts

*I declare under penalty of perjury that the foregoing is true and correct.*

**Signed this** 23 **day of** FEBRUARY , 2015 .

*Signature of Plaintiff*

2071 GROVE POINT ROAD
**Address**
SAVANNAH, GEORGIA 31419

(912) 507-9984
**Phone Number**

United States District Court
Southern District of Georgia

_______________ Division

ELLIOTT DUANE DAWKINS [ProSe] )
Plaintiff )
)
v ) Case No _______________
)
J.C. LEWIS PRIMARY HEALTH CARE )
Defendant )
)

CERTIFICATE OF SERVICE

This is to certify that I have on this day served all the parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF") which was generated as a result of electronic filing.

Submitted this 24TH day of FEB, 2015

By s/ [signature]
Attorney Name
Address

ELLIOTT DUANE DAWKINS [ProSe]
2071 GROVE POINT ROAD
SAVANNAH, GEORGIA 31419

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

(b) County of Residence of First Listed Plaintiff Chatham County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Pro Se Elliott Dawkins, 2071 Grove Point Road, Savannah, Georgia 31419

## DEFENDANTS

County of Residence of First Listed Defendant Chatham County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☒ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII of Civil Rights Act of 1964, 42 U.S.C. sec 2000

Brief description of cause:
Continual Discrimination, Harassment and intimidation for requesting monies owed for non payment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ $300,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*: JUDGE ______ DOCKET NUMBER ______

DATE 2/23/15

SIGNATURE OF ATTORNEY OF RECORD [signature] (Pro Se)

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______