# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

ELLIOT D. DAWKINS, )
)
    Plaintiff, )
)
v. ) Case No. CV415-043
)
J. C. LEWIS PRIMARY )
HEALTH CARE, *et al.*, )
)
    Defendants. )

## REPORT AND RECOMMENDATION

Elliot D. Dawkins, an African American "Respite Nurse," brings this employment discrimination action against "J. C. Lewis Primary Health Clinic" (JCLPHC) and some individuals. Doc. 1. He alleges that JCLPHC is "an instrumentality of the State of Georgia." *Id.* at 2. He sues under Title VII (42 U.S.C. § 2000 *et seq.*) and 42 U.S.C. § 1983. *Id.* at 1, 2. As he is unemployed, receives government assistance, and is deeply indebted, doc. 1 at 1-2, the Court grants his IFP motion. His case is subject to immediate dismissal, however, because his claims fail as a

matter of law.[1]

## A. 42 U.S.C § 1983 & Georgia Constitutional Claims

The Court takes judicial noticeof the official IRS' 501(C) charitable organization webpage documenting that "JC Lewis Primary Healthcare Center Inc." (Employer Identification Number 27-0380035) is precisely what defendant JCLPHC's own website's "About Us" webpage claims it to be: "[a] private non-profit 501(C) organization."[2]  Hence, it is simply

---

[1] The Court screens his case under 28 U.S.C. § 1915(e)(2)(B)(ii), which requires a district court to dismiss a claim of a plaintiff proceeding IFP for failure to state a claim for relief before service of process. *Leonard v. F.B.I.*, 405 F. App'x 386, 387 (11th Cir. 2010). Thus, the Court will review his complaint as if it were challenged under Fed. R. Civ. P. 12(b)(6). *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). Although a complaint "does not need detailed factual allegations, it "requires more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint does not suffice "if it tenders naked factual assertions devoid of further factual development." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] "Courts may take judicial notice of publicly filed documents," *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 n. 4 (11th Cir. 2015), and may do so under Rule 12(b)(6) to deem an allegation false if it is directly negated by a judicially noticeable document. Citing FED. R. EVID. 201(c)-(d) (allowing a judge to take judicial notice of a fact an "at any stage of the proceeding") and *Long v. Slaton*, 508 F.3d 576, 578 n. 3 (11th Cir. 2007) (recognizing a judge is not always limited to the four corners of the complaint at the Federal Rule of Civil Procedure 12(b)(6) stage and taking judicial notice of facts contained in a report from a state agency), the court in *McDowell Bey v. Vega*, 588 F. App'x 923 (11th Cir. 2014), ruled that an arresting officer was not liable under § 1983 for an alleged illegal arrest based on a *pro se* plaintiff-arrestee's claims that the officer fabricated outstanding felony warrants and then lied when the arrestee asked to see them. The district judge was authorized to judicially notice the arrest warrants in the plaintiff underlying criminal case; the warrants in fact were issued prior to, and were outstanding on, the date of arrest. *Id.* at 926-27.

The referenced website pages are attached to this Report.

2

*not* an instrumentality of the State of Georgia. Nor is any defendant in Dawkins' complaint shown by well-pleaded facts to a governmental actor,[3] so all of his state and federal constitution-based claims (i.e., his § 1983 claim) fail outright.

## B. Title VII Claims

Title VII protects against employment discrimination "because of

---

[3] As recently explained by the Eleventh Circuit in concluding that no § 1983 claim was stated against a private lender who repossessed a debtor's vehicle in violation of the automatic stay imposed by 11 U.S.C. § 362, Dawkins must plead and ultimately prove that a defendant is or was transformed into a "state actor":

> TitleMax, a private entity, may be considered a state actor for § 1983 purposes only if one of three conditions is met: (1) the State coerced or significantly encouraged it to repossess [the debtor's] vehicle; (2) by repossessing the vehicle, it "performed a public function that was traditionally the exclusive prerogative of the State"; or (3) the State was a "joint participant" in the repossession of the vehicle. *See Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001).

*In re Mollete*, 2015 WL 451235 at * 1 (11th Cir. Feb. 4, 2015).

Dawkins has pled no such facts here. For that matter, actions by "private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell–Baker v. Kohn*, 457 U.S. 830, 841 (1982), quoted in *Fuller v. Gates*, 2015 WL 854478 at * 9 (N.D. Ala. Feb. 27, 2015). So even were Dawkins to plead public funding and regulation by the State, that still would not suffice. "The Supreme Court has consistently refused to find joint participation in state action where the nexus between the private actor and the state was limited to public funding and regulation of the actor." *Not In My Front Yard: Freedom Of Speech And State Action In New York City's Privately Owned Public Spaces*, 22 J.L. & Pol'y 433, 461 (2013); 15 AM. JUR. 2D CIVIL RIGHTS § 78 (Feb. 2015) ("The acts of private contractors are not under color of state law, for the purposes of 42 U.S.C.A. § 1983, merely by reason of their significant or even total engagement in performing public contracts.").

3

. . . race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Dawkins has lost sight of this in many respects, as well as Title VII's special qualifiers. A Title VII claim based upon unequal treatment for pay and promotions, for example, must be based on one of the listed impermissible grounds and *not* some other ground, such as bureaucratic or personal ill will. *Volpe v. Connecticut Dept. of Mental Health and Addiction Services*, ___F. Supp. 3d ___, 2015 WL 418149 at * 7 (D. Conn. Jan. 30, 2015). As will be further explained below, Title VII plaintiffs thus must point to comparators (here, white employees) who received better treatment. They must also plead that they suffered an adverse employment action (e.g., demotion or lost promotion), plus causation (e.g., the adverse development befell them *because* of their race, religion, etc.).

These Title VII elements are missing here. Nearly all of Dawkins' allegations simply go to bad treatment he claims he received, but he fails to reference any non-minority comparators -- that at least one similarly situated white employee received better treatment.[4] Most of his

---

[4] In some instances Dawkins pleads just the opposite – that employees of both minority *and* non-minority races were given breaks that he was not. *See, e.g.,* doc. 1 at 6 ¶19 (complaining that he was told to purchase a uniform, yet "[t]wo males[,] one African position[ed] on day shift as Patient Care Technician and one Caucasian

allegations reflect only his mere disagreement with the way a supervisor or management handled things, including matters that otherwise did not directly affect him. *See, e.g.*, doc. 1 at 8 ¶ 26-46 (recounting several such instances, including: "Aretha Jones, CEO, boyfriend [sic] was shot and receive treatment at no cost and after hours").[5] Mere unpleasant work experiences simply do not support a Title VII claim. Again, a white comparator is required, *Volpe*, 2015 WL 418149 at * 7, *in addition* to an adverse employment action[6] and causation.

As for causation, Dawson has failed to allege that he suffered an adverse employment action *because* of race or some other enumerated

---

position on day shift as Radiology Technician, never purchased uniforms and [were] not reprimanded under JCLPHC standards.").

[5] He does not allege, for example, that he was injured but received no free treatment -- because of his race.

[6] In that regard,

> an adverse employment action is a "tangible employment action [that] constitutes a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (citations omitted). To prove an adverse employment action occurred, an employee must show a serious and material change in the terms, conditions, title, prestige, or privileges of employment. *Davis v. Town of Lake Park Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001). Moreover, the employee's subjective view of the significant adversity of the employer's action is not controlling.

*Shaw v. Mobile County Public School System*, 2015 WL 419805 at * 6 (S.D. Ala. Feb. 2, 2015).

Title VII factor. *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (11th Cir. 2013) (complaint by professor of East Indian origin did not allege any connection between his race and national origin and harassment alleged in complaint, as required to state Title VII claim against state university for hostile work environment). For example, he complains that "CEO Aretha Jones allowed her boyfriend to wash cars on the premises" (doc. 1 at 11 ¶ 43) but that simply does not meet those two requirements, let alone the comparator requirement. Plaintiff has not alleged that the car washing was a "perk" denied to him but granted to white comparators *because* he was black. *See Raj*, 714 F.3d at 331("Raj's complaint and speculation did not allege any facts, direct or circumstantial, that would suggest LSU's actions were based on Raj's race or national origin or that LSU treated similarly situated employees of other races or national origin more favorably.").

Dawkins also raises Title VII claims against individuals. *See, e.g.*, doc. 1 at 21-22 (against CEO Aretha Jones); *id.* at 1 & 21 ¶ 3 (he claims against "any other agency management found responsible for discriminatory and retaliatory treatment of Plaintiff from any position which enables them to discriminate and retaliate against any

employee."). These claims also fail outright. Title VII permits suits against a plaintiff's *employer*, not against co-employees or supervisors in their individual capacity. *Bryant v. Dougherty County Sch. Sys.*, 382 F. App'x 914, 916 n. 1 (11th Cir. 2010); *Fulst v. Thompson*, 2009 WL 4153222 at * 3-4 (S.D. Ohio Nov. 20, 2009) ("Supervisory employees are not typically proper defendants under Title VII because they do not fall within the definition of 'employer.'").

There is yet another flaw in Dawkins' Complaint. Before filing suit, Title VII plaintiffs must exhaust administrative remedies by filing a complaint, against the party they later sue, with the EEOC or an authorized state agency. 42 U.S.C. § 2000e–5(e). Also,

> [f]or an EEOC charge to be timely in a non-deferral state -- such as Georgia, the charge must be filed within 180 days of when the alleged violation occurred. 42 U.S.C. § 2000e–5(e)(1). Once the EEOC dismisses the charge and notifies the plaintiff of her right to sue, the plaintiff has 90 days in which to file suit on her claims in district court. 42 U.S.C. § 2000e–5(f)(1); *Santini v. Cleveland Clinic Florida*, 232 F.3d 823, 825 (11th Cir. 2000).

*Abram v. Fulton County Government*, 2015 WL 363944 at * 2 (11th Cir. Jan. 29, 2015) (cite omitted). Dawkins has pled no exhaustion or timeliness facts.[7] That can be fatal, *see, e.g., Keeton v. Big Lots Stores,*

---

[7] He complains of events beginning in 2012 and ending on January 17, 2014, when

7

*Inc.*, \_\_\_ F. Supp. 3d \_\_\_, 2015 WL 82836 at * 7 (N.D. Ala. Jan. 7, 2015) (employee failed to exhaust her administrative remedies on retaliation claim, based on employer's allegedly cutting her hours, scrutinizing her work, shouting at her, and generally treating her "downright ugly," where there was no evidence that any retaliatory acts occurred within 180-day period before the EEOC charge), though some courts do not consider timeliness and exhaustion to be pleading requirements. *Luckey v. Visalia Unified School Dist.*, 2014 WL 730699 at * 2 (E.D. Cal. Feb. 24, 2014) (collecting cases).

### C. Generic Claims

Dawkins seeks a variety of generic relief in his Complaint's "Prayer

---

he was discharged, doc. 1 at 4, but he fails to show 180-day EEOC compliance, let alone the EEOC's issuance of right-to-sue letter and his filing of this case within 90 days, as he filed it on February 24, 2015. Doc. 1 at 1. Plaintiff says only that he "filed a complaint on December 28, 2013 with the [EEOC]," *id.* at 3, but he fails to also allege what became of that administrative process.

That's critical, and the Court must see that paperwork, to: (a) assess timeliness; and (b) determine whether a claim presented here was also presented to the EEOC (if not, it is barred). *Abram*, 2015 WL 363944 at * 6 (citing 42 U.S.C. § 2000e–5(e)(i) and *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001)); *see also Shaw v. Mobile County Public School System*, \_\_\_ F. Supp. 3d \_\_\_, 2015 WL 419805 at * 5 (S.D. Ala. Feb. 2, 2015); *Brooks v. Firestone Polymers, LLC*, \_\_\_ F. Supp. 3d \_\_\_, 2014 WL 5088657 at * 22 (E.D. Tex. Oct. 8, 2014) (African-American employees' Title VII hostile work environment claims did not fall within scope of investigation that reasonably could have been expected to grow out of their EEOC charges, and thus employees failed to exhaust their administrative remedies with respect to such claims; EEOC charges alleged only failures to train, failures to promote, and discriminatory demotions).

For Relief." Doc. 1 at 21. The Court adopts the well-reasoned exegesis found in another *pro* se Title VII case:

> Finally, to the extent plaintiff was attempting to assert a claim other than one under Title VII, he failed to do so. Principles requiring generous construction of *pro se* pleadings are not without limits. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir.1989); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir.1985). A complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements. *See Schied v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988). District courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments. *Beaudett*, 775 F.2d at 1278. To do so would "require ... [the courts] to explore exhaustively all potential claims of a pro se plaintiff, ... [and] would ... transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.* at 1278. Moreover, plaintiff's failure to identify a particular legal theory in his complaint places an unfair burden on the defendants to speculate on the potential claims that plaintiff may be raising against them and the defenses they might assert in response to each of these possible causes of action. *See Wells v. Brown*, 891 F.2d at 594.

*Davis v. Frito-Lay*, 2014 WL 3748622 at *4 (N.D. Ohio July 28, 2014).

Dawkins is free to exploit the Fed. R. Civ. P. 72(b) Objection process to show that he deserves a chance to re-plead his case -- *if* he in good faith can show that he can fill the otherwise fatal gaps in his case.

9

Otherwise, it should be **DISMISSED WITH PREJUDICE**.

**SO REPORTED AND RECOMMENDED**, this  8th  day of April, 2015.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA